## The Joliet v. John Frances, Sheriff.

1.  CORPORATIONS—*De facto.*—Where it appears that there has been an honest attempt to organize a corporation authorized by the laws of the State, and the necessary steps to perfect such organization taken as required by the statute, except that the final certificate has not been recorded, but upon the issuing of such certificate by the Secretary of State, it as a corporation, elects officers and proceeds to the transaction of business as a corporation, and continues to act as such for a period of more than five years, it becomes a corporation *de facto.*

2.  SAME—*Existence of a Corporation Can Not be Questioned Collaterally.*—The legal existence of a corporation can not be questioned in a collateral proceeding.

Replevin.—Appeal from the Circuit Court of Will County ; the Hon. ROBERT W. HILSCHER, Judge, presiding.   Heard in this court at the May term, 1899.   Reversed and remanded.   Opinion filed October 12, 1899.

GEO. S. HOUSE and EDW. G. PURKHISER, attorneys for appellant.

The law is well settled in this State, that, under the plea of *nul tiel corporation*, the plaintiff need only show an organization in fact and a use of corporate franchise. Mitchell v. Deeds, 49 Ill. 422; Marsh v. Astoria Lodge, 27 Ill. 421; President and Trustees of Mendota v. Thompson, 20 Ill. 197; Town of Lewiston v. Proctor, 27 Ill. 414; Hamilton v. Town of Carthage, 24 Ill. 22.

. While it may be assumed that a corporate existence *de jure* depends upon the filing of the certificate of complete organization in the office of the recorder of deeds of the county in which the principal office is located, by reason of a failure so to do, it by no means follows that it did not become a corporation *de facto*. Bushnell v. Consolidated Ice Co., 138 Ill. 67; Forest Glen Brick and Tile Co. v. Gade, 55 App. Ill. 181; Gade v. Forest Glen Brick and Tile Co., 165 Ill. 367; Hudson v. Green Hill Seminary, 113 Ill. 625.

In order that there shall be a *de facto* corporation, two things are essential: First, there must be a law under which the corporation might be lawfully organized; and, second, user. American Trust Co. v. M. & N. W. R. R. Co., 157 Ill. 641; Mitchell v. Deeds, 49 Ill. 422.

HILL, HAVEN & HILL, attorneys for appellee.

The appellate courts of this State will not disturb the findings of the trial court as to questions of fact, unless it is clearly established that such findings are palpably erroneous. Coari v. Olson, 91 Ill. 273; Johnson v. Johnson, 125 Ill. 510; Voss v. Venn, 132 Ill. 14.

Under the general incorporation act, a corporation is not authorized to do business until its articles of incorporation are filed for record in the recorder's office of the county where its principal place of business is situate, and it can not make contracts of any kind or become the owner of property until that is done. Loverin v. McLaughlin, 46 App. 373; 161 Ill. 417; McCormick v. Market Nat. Bank, 162 Ill. 100; Gent v. M. & M. Ins. Co., 107 Ill. 652.

A pledgee of stock is not a stockholder. 1 Cook on Stock and Stockholders, Secs. 463-5-8; Travers v. Leopold, 124 Ill. 431.

A corporation, like an individual, may be estopped by matters *in pais.* Herman on Estoppel, Secs. 1168-70; Cobby on Replevin, Sec. 799; Colwell v. Brower, 75 Ill. 516; Kinnear v. Mackey, 85 Ill. 96.

Mr. Justice Higbee delivered the opinion of the court.

This was an action in replevin brought by appellant against appellee, as sheriff of Will county, to recover possession of certain goods and chattels, constituting the plant of a newspaper and job printing office which had been previously levied on by appellee as the property of one I. V. Park, to satisfy an execution against the latter in favor of one M. J. Rooney, issued November 4, 1896.

Among other pleas filed were one of *nul tiel corporation* and another alleging that appellant had so permitted Park to make use of the property in question, that, as against Rooney, a creditor of Park, the latter must be held to be the owner of the property. A jury was waived, and on hearing the court found against appellant and entered a judgment on the finding in favor of appellee. It appeared from the evidence that on March 30, 1891, I. V. Park, R. R. Bemis and E. E. Pierce obtained a license under the general incorporation act of 1872 for the purpose of organizing a corporation, to be known as "The Joliet." The capital stock was to be $10,000, divided into 1,000 shares of $10 each. This stock was subscribed by I. V. Park, 340 shares; E. E. Pierce, 330 shares, and R. R. Bemis, 330 shares. The final certificate of organization of the corporation was issued July 1, 1891, but was not filed for record in the office of the recorder of Will county, where the only office of the corporation was located, until November 19, 1892. On June 27, 1891, Park had negotiated with Barnhart Bros. & Spindler of Chicago for the purchase of certain printing machines, printers supplies and other material, for the sum of $2,078.79, of which he paid in cash the sum

of $650, making arrangements to secure time for the payment of the balance. At a meeting of the stockholders of The Joliet, held on the 2d day of July, 1891, as shown by appellant's record book, I. V. Park was elected president, R. R. Bemis, vice-president, and E. E. Pierce, secretary and treasurer. At the same meeting a motion was carried that the officers of the company be authorized to sign on the 3d day of July, 1891, certain promissory notes, bearing date June 27, 1891, payable to Barnhart Bros. & Spindler, for the sum of $1,428.79, to be delivered to the First National Bank of Joliet, to be held by it in escrow, pending the arrival of a boiler, job press and other material to complete the invoice of Barnhart Bros. & Spindler. At the same time the officers of appellant were in like manner authorized to execute a chattel mortgage upon said property, to secure the payment of said notes. The notes and mortgage above mentioned were afterward executed, as provided for in the resolution, being signed by "The Joliet, I. V. Park, president; E. E. Pierce, secretary and treasurer; R. R. Bemis, vice-president." The chattel mortgage was acknowledged July 3, 1891, by appellant through its said officers, and described the property purchased of Barnhart Bros. & Spindler and involved in this suit. Afterward in June, 1893, this mortgage having expired, a new one was made to secure the notes still remaining unpaid, and was signed by The Joliet, I. V. Park, president, and attested by M. O'Hara, secretary and treasurer. On June 2, 1894, the mortgage indebtedness having been paid, the mortgaged property was released of record to appellant. The property in question was delivered to appellant by Barnhart Bros. & Spindler soon after the execution and delivery of the notes and original mortgage, and it is claimed by appellant that the same has been since used by it in the publication of a daily newspaper, the first paper having been published in July, 1891.

M. J. Rooney entered the employment of The Joliet with the issue of its first paper, in charge of its circulation. In September, 1891, Park solicited him to take an interest in

the paper and its plant by buying out Bemis, which he consented to do, paying at the time $100 for the Bemis interest. Thereupon Bemis tendered his resignation as vice-president and director, and Rooney was elected vice-president in his stead.  On September 21, 1891, Pierce was removed from his office as secretary and treasurer and Rooney was also elected secretary and treasurer, the record of this meeting being signed in the record book by Park as president and Rooney as secretary and treasurer.  Rooney afterward paid in other money, to the amount in all of $610, was made business manager, and was so advertised at the head of the editorial column of the paper.  Rooney afterward sold his interest to other parties, resigned his office and retired from the business.  Subsequently he again went to work for appellant, and having received only a portion of the amount due him for his stock, Park caused to be issued and delivered to him a certificate for fifty shares, which Rooney accepted.  Park asserts that this stock was delivered to Rooney in full of the amount due him, while Rooney asserts that he accepted the certificate simply as security for his money.  On October 28, 1892, Rooney commenced suit against Park by attachment, and levied upon the property in controversy.  On the 26th of October, 1896, judgment was duly entered in favor of Rooney against Park, and on November 4, 1896, a special execution was issued, which was also levied on said property.  Thereupon the writ of replevin in this case was sued out by appellant.  On June 30, 1892, the rent being due for the premises occupied by appellant, Park, after having consulted with an ·attorney, who told him that appellant had no corporate existence and could not exercise corporate power, gave a chattel mortgage in his own name to the landlord for the rent, which was afterward, on October 22, 1892, paid and released.  Park claimed that the money to make this payment was furnished by his wife, and on the day the payment was made, he, in his own name, executed a bill of sale of the property to his wife, which was not acknowledged, but was duly recorded.

It also appears that Park, on October 25, 1892, executed another bill of sale to his wife on the same property, which was acknowledged by him on October 31, 1892, but not recorded. There is no proof, however, in the record, that Mrs. Park ever went into possession of the property under either of these bills of sale. Shares of stock in the company had been sold from time to time to other persons than those named, and among them Charles Werner, who received a certificate for ten shares, Swan Anderson ten shares, and Michael Binsen five shares, all of said certificates having been issued August 17, 1891. These shares were duly paid for and were held by Werner, Anderson and the estate of Binsen at the time of the commencement of the suit.

No record of Park's action in mortgaging or executing bills of sale upon the property, was ever entered upon the books of appellant. It does not appear from the evidence that he executed said instruments with the knowledge or consent of Swan Anderson or representatives of Binsen, who has since died, while Werner testified that he never authorized Park to use the property of the corporation as his own and did not know that he had ever mortgaged the property in his own name or used it or any part of it as his own. These stockholders, therefore, could not be bound by the action of Park in mortgaging or conveying the property as his own.

Propositions of law, one and two, submitted by appellee, and held as law governing the case by the court, were based upon the theory that the purchase of the property in controversy was made by Park for himself prior to the time the certificate of incorporation was issued to plaintiff, and before the election of its directors, and that thereby he became the owner of said property; that at the time of the purchase, plaintiff was not a corporation *de facto* or *de jure*, and was incapable of making contracts or acquiring property. We think these propositions of law should have been refused by the court. In our opinion the property in question was purchased of Barnhart Bros. & Spindler, not by

Park, but by appellant, after its certificate of incorporation was issued to it.

It is true that Park made arrangements for the purchase of the property, and paid certain money down, prior to July 1, 1891, but all this was done on behalf of the corporation, which he, and the others associated with him, had already taken steps to organize. Park received credit for the money advanced by him on his stock, and the greater part of the purchase money for the property was covered by the notes and mortgage, given by appellant after it had received its certificate.

There is nothing in the evidence to show that Barnhart Bros. & Spindler ever intended to, or did invest Park with any title to said property, or that they ever parted with the title until it passed to appellant. There can be no doubt, under these circumstances, but that the sale was made directly to appellant. We are also of opinion, that at the time of the sale, appellant was a *de facto* corporation, capable of receiving the property, notwithstanding the fact that it failed to file its certificate of organization until more than a year later.

In Bushnell v. Consolidated Ice Machine Co., 138 Ill. 67, it is said:

" But assuming that a corporate existence *de jure* depends upon the filing of the certificate of complete organization in the office of the recorder of deeds of the county in which its principal office is located, and that the bill properly avers that it was not done in the case of the corporation in question, it by no means follows that it did not become a corporation *de facto* as between the complainant and defendants. From the facts set up in the bill, it clearly appears that there was an honest attempt by the incorporators to organize a corporation authorized by the laws of this State. The necessary steps to perfect that organization were all taken as required by the statute, except that the final certificate was not recorded. It is shown by the bill that upon the issuing of that certificate its directors elected the proper officers and proceeded to the transaction of business as a corporation, and continued to act as such until the filing of this bill, a period of more than five years. That these facts establish a corporation *de facto* is settled by numerous decisions of this court."

In American Loan and Trust Company v. M. & N. R. R. Co., 157 Ill. 641, it is said:

" But in order that there should be a *de facto* corporation, two things are essential: first, there must be a law under which the corporation might lawfully be created; and, second, user. Where the law authorizes a corporation and there is an attempt in good faith to organize, and corporate functions are thereupon exercised, there is a corporation *de facto*, the legal existence of which can not ordinarily be questioned collaterally."

In this case, the evidence showed an attempt in good faith to organize a corporation. All the necessary steps were taken, and a certificate of organization was properly issued. The only thing lacking being the proper filing of the latter.

Under the circumstances, we are of opinion that the legal existence of appellant, as a corporation *de facto*, can not be questioned in this proceeding. Certain it is that Rooney, the real party in interest, is not in a position to question the same. He entered into its employment, as its manager, and was so advertised; he purchased stock in the corporation; was elected its vice-president, and afterward secretary and treasurer, and under the latter titles signed appellant's records. After selling out his stock at one time, he again took stock of appellant, either by purchase of the same, or, as he says, collaterally. Having recognized the existence of the corporation in all these different ways, and in his several capacities, as an officer of the same, he should not now be permitted in this suit to deny appellant's legal existence.

The third proposition of law, given for appellee and held by the court, was also erroneous, in that it assumed that the property in question belonged to I. V. Park at the time of the levy of the writ of attachment.

For the reasons above given, the judgment in this case will be reversed and the cause remanded.