[L. A. No. 9198.   In Bank.—May 19, 1926.]

# WESTLAKE PARK INVESTMENT CO., Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

[1] Corporations—Stock of Differing Par Values—Articles of Incorporation—Secretary of State.—A corporation having as its stock structure capital stock of differing par values may not be created in this state; and the Secretary of State would be justified in refusing to file original articles of incorporation containing such a stock structure or to issue a certificate of incorporation thereon.

[2] Id.—Grant of Certificate of Incorporation—Doing of Business—De Facto Corporation.—Notwithstanding that a corporation's stock structure is composed of preferred and common stock of differing par values, such a corporation is, neverthlesss, a *de facto* corporation, where its articles of incorporation are otherwise in exact conformity with section 290 of the Civil Code, and it has been granted a certificate of incorporation, whereupon it began and has since continued to function as a corporation and is a going concern.

[3] Id. — De Facto Corporations — Reason for Upholding. — The philosophy upon which the courts of practically every state and of the United States have gone far toward upholding the existence *de facto* of corporations which have colorably attempted to organize under statutes permitting incorporation for the general purposes which the persons forming the same seek to incorporate, and which have thereafter in good faith proceeded to function as such corporations, is that the law encourages and shares in the universal desire for the stability of business transactions, and that where such an organization has thus attempted to be created and has in fact organized and entered upon the transaction of business in good faith, the validity of its existence ought not to be inquired into collaterally.

[4] Id.—Articles of Incorporation—Right and Duty of Secretary of State—Licenses.—It is the right and duty of the Secretary of State to determine whether a corporate organization has been accomplished in conformity with the statutory laws relating to the same before he issues its charter or certificate of incorporation; but the Secretary of State in his capacity as a collector of licenses under the revenue laws of this state is exercising no such function; he is engaged in the performance of a strictly min-

2.  See 6 Cal. Jur. 655; 7 R. C. L. 62.
4.  See 6 Cal. Jur. 637.

isterial function—such a function as might have been reposed in the state treasurer or state controller or any other state official, or even in county officials in counties where the principal place of business of corporations seeking such licenses might be located.

[5] ID.—LICENSE TAX—NATURE OF.—The tax imposed upon corporations for the privilege of continuing to carry on their business in this state during the current year is a strictly revenue measure.

[6] ID.—LICENSE TAX OF DE FACTO CORPORATION—DUTY AND POWER OF SECRETARY OF STATE.—The Secretary of State is neither bound to the duty nor invested with the power of determining whether a corporation, acting *de facto* as such, is or is not a *de jure* corporation when in either capacity it offers to pay its annual license tax and demands the issuance of a license permitting it to continue to do business in this state for the current year.

[7] ID.—QUO WARRANTO.—The legal existence of a corporation *de facto* can only be inquired into in a proceeding in the nature of a writ of *quo warranto* instituted by the state on the relation of its attorney-general, wherein the right of the corporation to exercise its franchise may be judicially inquired into and determined.

[8] ID.—FILING OF AMENDED ARTICLES.—The holding that a corporation is a *de facto* corporation implies the existence of the right to file amended articles of incorporation.

(1) 14 **C. J.**, p. 393, n. 27, 28. (2) 14 **C. J.**, p. 214, n. 92. (3) 14 **C. J.**, p. 214, n. 92. (4) 14 **C. J.**, p. 147, n. 56. (5) 37 **C. J.**, p. 234, n. 83. (6) 14 **C. J.**, p. 209, n. 32. (7) 14 **C. J.**, p. 251, n. 27. (8) 14 **C. J.**, p. 182, n. 55.

PROCEEDING in Mandamus to compel the Secretary of State to receive corporate license tax and to issue license authorizing transaction of business for current year. Writ granted.

The facts are stated in the opinion of the court.

Newlin & Ashburn for Petitioner.

U. S. Webb, Attorney-General, Robert W. Harrison, Deputy Attorney-General, and Lionel B. Browne for Respondent.

5. See 7 Cal. Jur. 231.
7. See 6 Cal. Jur. 660; 7 R. C. L. 68.

RICHARDS, J.—The petitioner herein applies for a writ of mandate to compel the respondent, as Secretary of State of the state of California, to accept from the petitioner its corporation license tax for the year 1926 and to thereupon issue a license in conformity with the Corporation License Act authorizing the transaction of business by it in this state for the current year. The petitioner appends to its said application a copy of its articles of incorporation made, executed, and filed in the office of the said Secretary of State during the month of October, 1923, whereupon, as the petitioner alleges, a certificate of incorporation was issued to it by the respondent as such Secretary of State; and further alleges that ever since the issuance thereof the petitioner has been, and now is, a corporation engaged in the transaction of business in this state; that the petitioner during the years 1924 and 1925, respectively, paid to the respondent upon his demand the license tax required of said petitioner under the said Corporation License Act for each of said years respectively and received from said respondent a license authorizing the transaction by it of business in the state of California during each of said years. It is further alleged that the proffer of the similar license tax by the petitioner and its request for a like license for the year 1926 have been refused by the respondent for the reasons which will hereinafter appear; wherefore its application for this writ. The respondent has presented his answer and return to the alternative writ issued herein in the form of a demurrer and we are thus presented with the questions of law which arise upon the face of the petitioner's said application. The first of these questions has reference to the status of the petitioner as a corporation organized and doing business in and under the laws of the state of California. The respondent herein contends that it is not such a corporation for the reason that in its attempted organization as such corporation it has omitted in a vitally essential respect to conform to the requirements of the state constitution, in that it has provided in its articles of incorporation for a corporate stock structure which is in violation of such constitution, and particularly of sections 3 and 12 of article XII thereof as these sections of said constitution have been interpreted by this court in the cases of *Film Producers Co.* v. *Jordan,* 171 Cal. 664 [154 Pac. 605], and *Del Monte*

*L. & P. Co.* v. *Jordan,* 196 Cal. 488 [238 Pac. 710]. The particular defect in the petitioner's original articles of incorporation to which the respondent thus directs our attention is this: That it is therein provided that the corporation thus attempted to be created was to have as its authorized capital stock "10,000 shares of preferred stock of the par value of one hundred dollars ($100.00) per share, amounting in the aggregate to one million dollars ($1,000,000.00), and 10,000 shares of common stock without nominal or par value." The preferences provided for in said articles of incorporation in favor of the preferred stock have reference to preferences in the profits and dividends of the corporation and in the division of its assets in the event of its liquidation or dissoluton. [1] / It may not be questioned that the effect of the two decisions of this court above referred to is to forbid the initial creation of corporations having as their stock structure capital stock of differing par values. It must further be considered as settled by said decisions that if the petitioner herein were now presenting to. the Secretary of State for filing, and for the issuance of a charter thereon, its said articles of incorporation showing its organization upon the aforesaid double basis as to the par values of its stock issues the Secretary of State might have been justified in refusing to file said original articles or to issue a certificate of incorporation thereon. It may be noted, however, as having some more or less important bearing upon the present inquiry, that the original articles of incorporation which the petitioner herein presented for filing to the Secretary of State during the year 1923 contained two particular provisions in addition to those above referred to, each having relation to its stock capitalization. In the first of these it was stipulated as follows: "(c) No preference is hereby granted, nor shall any distinction be made between the classes of stock either as to voting power or as to the statutory or constitutional liability of the holders thereof to creditors of the corporation, and no distinction shall exist between the said classes of stock or the owners thereof except as to the preferences herein prescribed." The other of the provisions of the petitioner's said original articles of incorporation was that set forth in article VIII thereof, which showed that the actual stock subscription of the said corporation at the time of the formation thereof and of the offer for filing of

its said articles of incorporation was that of five shares of preferred stock of the par value of one hundred dollars per share. [2]   The effect of the foregoing provisions of the petitioner's said original articles of incorporation has not been emphasized before this court as to their bearing upon the immediate inquiry, but even if it must be assumed in the light of the foregoing decisions of this court that the petitioner herein was not, strictly speaking, a corporation *de jure* at the time of its proffer for filing of its original articles of incorporation containing the foregoing provisions, we are nevertheless of the opinion that said corporation, by virtue of the above provisions of its said articles which, except in the one particular above set forth, were in exact conformity with the provisions of section 290 of the Civil Code and also by virtue of the issuance to it of its original certificate of incorporation; and also by virtue of the fact that said corporation upon the receipt and filing of its said articles and the issuance to it of its said certificate of incorporation began and has since continued to function as a corporation and is a going concern in this state, became a *de facto* corporation, and that it was such *de facto* corporation at the time of its last proffer of its license tax and demand for the issuance to it of a license to continue to do business as a corporation during the year 1926. The authorities, we think, support us in this conclusion. In the early case of *Rondell* v. *Fay,* 32 Cal. 354, 361, it was held that a corporation attempted to be organized by five persons and to exist for a period of twenty-five years under the terms of an act authorizing the formation of such corporations (Stats. 1861, p. 567), which provided that not less than *seven* persons might so incorporate for a period of not longer than five years, was nevertheless a corporation *de facto* when in fact and in good faith it had undertaken to perform the functions of such a corporation, and that its corporate existence could only be attacked at the suit of the state or on information by the attorney-general.   In the case of *People* v. *Perrin,* 56 Cal. 345, the corporation, the legal existence of which was therein brought into question by a *quo warranto,* had been organized under the act of the legislature of 1853 (Stats. 1853, p. 87), which required the specification in the articles of the amount of capital stock and the number of shares into which the same was divided. The articles of the corporation in question omitted both

of these requirements, but nevertheless received a certificate of incorporation and became a going concern. A later act of the legislature undertook to validate corporations thus defectively organized. Thereafter the attorney-general instituted a *quo warranto* proceeding to test the legality of the existence of said corporation, and in that proceeding this court held that the certificate of said corporation, though thus defectively organized, was not void and that the corporation thus formed and transacting the business of a corporation was entitled to the benefits of the validating act. In the case of *Tulare Irr. Dist.* v. *Shepard,* 185 U. S. 1, 13 [46 L. Ed. 773, 22 Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes], Mr. Justice Peckham, after a quite full review of certain California and other decisions touching the question as to what would constitute a *de facto* corporation, stated: ''From the authorities, some of which are above cited, it appears that the requisites to constitute a corporation *de facto* are three ' (1) a charter or general law under which such a corporation as it purports to be might be lawfully organized; (2) an attempt to organize thereunder; (3) actual user of the corporation franchise.' '' In the latest edition of Thompson on Corporations the foregoing statement is adopted as stating the consensus of authority upon the subject and many cases are referred to as illustrating the application of the foregoing rule. Among these the California decisions above referred to are cited and other similar instances given wherein, notwithstanding serious defects or omissions to comply with the laws governing the organization of corporations, there had been a colorable attempt to comply with the statutes authorizing the formation of such a corporation as the one under criticism, purported to be followed by an actual exercise of corporate functions in good faith. (See 1 Thompson on Corporations, 2d ed., c. 9, sec. 225 et seq.) [3] The philosophy upon which the courts of practically every state and of the United States have gone far toward upholding the existence *de facto* of corporations which have colorably attempted to organize under statutes permitting incorporation for the general purposes which the persons forming the same seek to incorporate, and which have thereafter in good faith proceeded to function as such corporations, is that the law encourages and shares in the universal desire for the stability of business transactions, and that where such an

organization has thus attempted to be created and has in fact organized and entered upon the transaction of business in good faith, the validity of its existence ought not to be inquired into collaterally. (Idem, sec. 248.)

The foregoing citations and principles, we think, apply to the case in hand. Section 290 of the Civil Code is the section thereof which purports to provide for the organization of commercial corporations and to set forth the seven requisites of articles of incorporation of such organizations. It supplies the first condition above referred to in that it is the general law under which corporations having the purposes of the corporation here under consideration may be formed. An examination of the articles of the instant corporation shows an almost meticulous effort to comply with the requirements of this section of the code; and while it is true that in designating the stock structure the organizers of this corporation have attempted to bring its said stock structure within the permissive provisions of another and later adopted section of said code, viz., section 290b thereof, they have also and in their said articles of incorporation undertaken to provide in strict conformity with section 290 thereof that the voting power or constitutional liability of the holders of the stock thereof shall in nowise be affected thereby. Whether these provisions in said articles of incorporation would or would not be entirely effectual to accomplish the stated result may be debatable, but it cannot, we think, be said either that this corporation has sought to become organized under an unconstitutional statute or that its attempt so to do has not been colorable and done in good faith. Nor is the *bona fides* of its subsequent acts in its assumed corporate capacity questioned in this proceeding. The cases cited by the respondent, and especially the case of *Brandenstein* v. *Hoke*, 101 Cal. 131 [35 Pac. 562], holding that an attempted organization of a corporation under an unconstitutional law, there being no other law under which such a corporation could be organized at all, will not suffice to call into being a *de facto* corporation, has, we think, no application to the instant case; nor are the Washington cases cited by respondent applicable, since these refer to the filing of original or amended articles of incorporation which were subject to the defects noted therein. The distinction between those cases and the instant case will be more fully considered presently. It is our conclusion

upon the point now under consideration that the petitioner herein, at the time it proffered the amount of its license tax for the year 1926 and requested the issuance of a license permitting it to engage in the business for which it was organized and had theretofore been functioning prior to and during the year 1926, was a *de facto* corporation.

This brings us to the second question presented upon this application, and which concerns the right and power of the respondent as Secretary of State to decline to receive the license tax and to refuse to issue a license to a *de facto* corporation duly tendering such tax and requesting the issuance of such license permitting such corporation to continue to do business in this state during the current year. The Secretary of State with respect to those powers and duties which have been reposed in that office having to do with the issuance of original or amended certificates of incorporation exercises a function which was originally reposed in the crown or sovereign under the English law. The issuance of a corporate charter by the king was a royal prerogative and necessarily its exercise contemplated a determination of the due organization and legal right of the applicant for such a charter. Under our American inheritance of the English system of laws the issuance of corporate charters was a like attribute of sovereignty and was attended with a like duty to be exercised by the officials of the state. [4] It is, therefore, the right and duty of the Secretary of State to determine whether a corporate organization has been accomplished in conformity with the statutory laws relating to the same before he issues its charter or certificate of incorporation. But the Secretary of State in his capacity as a collector of licenses under the revenue laws of this state is exercising no such royal function or prerogative. He is engaged in the performance of a strictly ministerial function—such a function as might have been reposed in the state treasurer or state controller or any other state official, or even in county officials in counties where the principal place of business of corporations seeking such licenses might be located. [5] The tax imposed in this form upon corporations is a strictly revenue measure. It is merely a license fee or tax charged upon corporations for the privilege of continuing to carry on their business in this state during the current year. (*Kaiser Land & Fruit Co.* v. *Curry*, 155 Cal.

638 [103 Pac. 341].)   Its charge or its collection or the issu-
ance of the receipt, or so-called license, issued upon the pay-
ment of the impost, neither imports nor requires any other
or further inquiry into the original legality of the corporate
organization than that possibly of determining whether on
the face of things it appears to be such an organization as
would be properly subject to such a tax.   For convenience
in the making of this inquiry the tax is made collectible
by the Secretary of State for the apparent reason that the
official records of corporate organizations under the laws of
this state are on file in his office.   But it should be clear
that the Secretary of State in the exercise of this purely
ministerial function of a tax gatherer has been neither
charged with the duty nor cumbered by the burden of an-
nually ransacking the files of his office when the time for
the collection of this license tax arrives for the purpose of
discovering whether the corporation purporting to be such
and offering to pay the same has in law or in fact been
legally organized.   To essay such an inquiry would entail
upon this official an undue and endless burden for which
he might in point of learning or experience be entirely un-
fitted, and would measureably defeat the very object of the
law, viz.: the collection of the largest possible revenue to the
state from this source of taxation.   We find nowhere in
the act relating to the collection of this corporate license
tax any express investiture of the Secretary of State with
the powers he here seeks to exercise, and the only language
therein upon which the respondent relies as importing such
power is that embraced in section 3 of said act (as amended
by Stats. 1917, p. 373), which provides that "every corpora-
tion incorporated under the laws of this state" must pro-
cure the license provided for therein.   This general phrase
would, however, apply equally to *de facto* as to *de jure*
corporations, since the former, however defectively organ-
ized, would still be incorporated under the laws of the state.
Otherwise they could not, as we have seen, become *de facto*
corporations at all.   [6]   We therefore reach the conclusion
that the respondent herein is neither bound to the duty nor
invested with the power of determining whether a corpora-
tion, acting *de facto* as such, is or is not a *de jure* corpora-
tion when in either capacity it offers to pay its annual
license tax and demands the issuance of a license permitting
it to continue to do business in this state for the current

year. [7] We do not need to consider the application or nonapplication of section 358 of the Civil Code to a proceeding of this nature, for the reason that entirely independent of said code section it is a long established principle of law that the legal existence of a corporation *de facto* can only be inquired into in a proceeding in the nature of a writ of *quo warranto* instituted by the state on the relation of its attorney-general, wherein the right of the corporation to exercise its franchise may be judicially inquired into and determined. [8] Nor do we need to pass upon the petitioner's further contention as to its present right to file amended articles of incorporation, further than to say that our holding that it is a *de facto* corporation implies the existence of such right.

Let a writ issue directed to the Secretary of State requiring him to receive the petitioner's license tax and issue to it the required license as prayed for in its petition herein.

Shenk, J., Curtis, J., Waste, C. J., Lennon, J., Seawell, J., and Nourse, J., *pro tem.*, concurred.

Rehearing denied.