[S. F. No. 12375. In Bank.—July 13, 1927.]

## MIDWEST AIR FILTERS PACIFIC, INC. (a Corporation), Respondent, v. THOMAS F. FINN, Sheriff, etc., and WILLIAM WARREN, Appellants.

[1] CORPORATION LAW — DE FACTO CORPORATIONS — VALIDITY OF CONTRACT.—The failure of a corporation to file a certified copy of its articles of incorporation in the office of the clerk of the county in which its principal place of business is situated, after receiving its certificate of incorporation from the Secretary of State, does not render invalid a contract made by it, where the facts show it to have been a *de facto* corporation at the time of the execution of the contract.

[2] ID. — REQUISITES OF DE FACTO CORPORATION. — The requisites to constitute a corporation *de facto* are, a charter or general law under which such a corporation as it purports to be might lawfully be organized, a *bona fide* attempt to organize thereunder, and an actual user of the corporate franchise.

[3] ID.—ORGANIZATION OF CORPORATION—FAILURE TO COMPLY WITH SECTION 296, CIVIL CODE.—The requirements of section 296 of the Civil Code that a copy of the articles of incorporation be filed in the county wherein the corporation is to transact its principal business is not a condition precedent to corporate organization, and noncompliance with such a condition subsequent does not affect the existence of the corporation, although it may be ground for a proceeding by the state to forfeit the charter or franchise.

---

2. What constitutes a *de facto* corporation, note, 118 Am. St. Rep. 118. See, also, 6 Cal. Jur. 656; 7 R. C. L. 61. *De facto* corporations, note, 24 L. R. A. 293.

3. Effect upon corporate existence of failure to file certificate in organizing a corporation, notes, 22 A. L. R. 376; 37 A. L. R. 1319. See, also, 6 Cal. Jur. 636, 639; 7 R. C. L. 56.

[4] Id. — De Facto Corporation — Right to Hold Property. — A *de facto* corporation is not precluded from asserting any property rights acquired by it prior to the filing of a copy of its articles as provided in section 296 of the Civil Code.

[5] Id. — Contracts — Statute of Frauds—Sale of Personal Property.—Where it is shown that a corporation had not only paid a part of the contract price of an automobile it was purchasing but had accepted delivery of the vehicle through its authorized agent, the provisions of the statute of frauds (subd. 4, sec. 1624, Civ. Code) were satisfied.

[6] Id.—Purchase of Automobile—Section 3440, Civil Code.—Where the original purchaser of an automobile, under a conditional sales contract, returned the same to the legal owner after the latter had procured a judgment or was about to procure a judgment against him in an action instituted to recover the unpaid installments of the purchase price, and some months thereafter, and while the car was still in the possession of the legal owner, it was purchased and delivered to a corporation by the legal owner, and the division of motor vehicles, prior to the levy of execution on judgment against the first purchaser, issued its certificate of registration in favor of the corporation as the registered owner, the provisions of section 3440 of the Civil Code were not violated, although the first owner was in control of the corporation.

[7] Id.—Disregard of Corporate Entity—Equity.—In proper cases equity will look behind a corporate entity and consider who are the real and substantial parties in interest, whenever it becomes necessary to promote justice, or obviate inequitable results, and the law will follow equity in this respect; but where there is nothing to challenge the good faith of parties in the formation of a corporation, or to contradict the testimony that the incorporators, other than the one who controls the corporation, subscribed and actually paid for shares of stock, and that one of them is the financial backer, no issue being tendered by the pleadings on the question, it will not be held that the corporation and one of the incorporators shown to be controlling it should be treated as identical.

---

(1) 14 C. J., p. 208, n. 29, p. 221, n. 35.   (2) 14 C. J., p. 214, n. 92.   (3) 14 C. J., p. 120, n. 72, p. 152, n. 80, p. 204, n. 21.   (4) 14 C. J., p. 209, n. 33.   (5) 27 C. J., p. 239, n. 88, p. 252, n. 40, p. 324, n. 16.   (6) 27 C. J., p. 577, n. 57.   (7) 14 C. J., p. 52, n. 23, p. 61, n. 78.

4.  See 7 R. C. L. 67.

5.  Acceptance and delivery of goods to satisfy statute of frauds, notes, 49 Am. Dec. 325; 37 Am. Rep. 16; 96 Am. St. Rep. 215. See, also, 12 Cal. Jur. 878; 25 R. C. L. 620.

6.  See 12 Cal. Jur. 992.

7.  Disregarding corporate existence, notes, 1 A. L. R. 610; 34 A. L. R. 597. See, also, 6 Cal. Jur. 591.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Franklin A. Griffin, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Simeon E. Sheffey for Appellants.

James C. Espey for Respondent.

THE COURT.—This appeal has been prosecuted by the defendants from a judgment of the superior court in and for the city and county of San Francisco.   The cause was taken over by this court after decision by the district court of appeal, first appellate district, division two.   (51 Cal. App. Dec. 458.)   We adopt the following portion of the opinion of that court as containing a correct statement of the facts giving rise to this litigation.

"This case was tried before the court sitting without a jury and resulted in a judgment in favor of plaintiff and against both defendants in the sum of $428.05, from which both defendants have appealed on a typewritten record, under section 953a of the Code of Civil Procedure. . . .

"The defendant, William Warren, recovered two judgments, aggregating $300, in the justice's court of the city and county of San Francisco against one Walter B. Lomax. On January 2, 1924, execution was issued on these judgments and placed in the hands of the defendant Sheriff of the City and County of San Francisco, with instructions to levy upon a certain King '8' automobile, then in the possession of Walter B. Lomax.   The Sheriff seized and took into his possession the automobile on or about January 24, 1924, in pursuance of said instructions.   A third party claim was immediately filed with the Sheriff on behalf of the plaintiff and respondent, Midwest Air Filters Pacific, Inc., a corporation, demanding that said car be released, and alleging that said respondent was the owner and entitled to the possession of said automobile.   Upon receipt of this third party claim, the Sheriff informed said William Warren that unless a bond was filed to indemnify him against damages for holding said automobile, the same would be released to claimant,

Midwest Air Filters Pacific, Inc.; whereupon the attorney for Warren and the attorney for said corporation entered into a stipulation by which they agreed to, and did deposit, with the said Sheriff the sum of $428.05, being the amount agreed upon to be necessary to satisfy said two judgments against the said Walter B. Lomax. They further stipulated that the money was to be held by the Sheriff in lieu of the automobile, and that the automobile should be immediately released, and that a court of competent jurisdiction should thereafter determine the ownership of the automobile. Pursuant to this stipulation, the automobile was thereafter returned to Walter B. Lomax, acting for said corporation, and thereafter the said sum of $428.05 was paid by the said Sheriff to the said Warren. Thereupon plaintiff commenced this action against the Sheriff and Warren for the recovery of said sum of $428.05.

"On July 6, 1922, the said Walter B. Lomax purchased this same automobile from the Kings Coast Parts Distributing Company, under a conditional sales contract, in which the Kings Coast Parts Distributing Company retained the title. The car was duly registered for the year 1922 in the name of H. S. Smith, of San Francisco, as legal owner, and Walter B. Lomax as registered owner. Lomax took possession of the car, used it in his business for some months and made certain payments under the contract, but being unable to keep up the payments, suit was instituted to recover possession of the car, but before judgment was entered in this action, Lomax, in the early spring of 1923, surrendered the car to Max Arnold, who was supposed to be the agent of the legal owner. Mr. Lomax had an understanding with Mr. Arnold that the car would be sold by Arnold, and if it brought in excess of the amount due on the car, then the excess was to be paid to Lomax. Lomax at that time signed his name on the registration certificate as registered owner. Arnold kept the car in his garage, or the garage of the Kings Coast Parts Distributing Company, without any attempt to re-register the car with the Motor Vehicle Department, until about the 25th of August, 1923, when he sold it again under a conditional sales contract to plaintiff, Midwest Air Filters Pacific, Inc., a corporation, but all of the business pertaining to this second sale and purchase was had with Lomax, and in the second transfer a new registration

was issued by the Motor Vehicle Department and registered in the name of the Kings Coast Parts Distributing Company as legal owner, and Midwest Air Filters Pacific, Inc., as registered owner, and the car turned over again to Walter B. Lomax, who continued to keep it in his possession and use it in his business as traveling salesman until taken by the Sheriff on or about the said 24th day of January, 1924. Between the time that Lomax returned the car to Max Arnold, in default of payments on the first purchase, and the time he received it back on or about the 25th of August, 1923, he had incorporated the plaintiff corporation, under the laws of the State of California, and on the 22d day of July, 1923, received a certified copy of the articles of incorporation from the secretary of state. At this point it is well to state that Midwest Air Filters Pacific, Inc., was almost entirely, if not wholly, governed and controlled by Walter B. Lomax; he was a stockholder and its general manager. The other stockholders and officers were his wife and a lady by the name of Luce, who lived in the Lomax family, but apparently had no knowledge of the affairs of the corporation. Lomax had been the agent of certain Eastern manufacturers on the Pacific coast before this corporation was formed, and continued to represent the same manufacturers through this corporation after its incorporation.

"Defendants contend that the conditional sales contract from Max Arnold, as seller, to the plaintiff, Midwest Air Filters Pacific, Inc., a corporation, buyer, dated August 25, 1923, under which the plaintiff claims to own the car in question, is illegal and void for the reason that the said plaintiff was not at that time authorized to transact any business.

"This contention is based upon that portion of section 296 of the Civil Code which provides that no corporation shall be authorized to transact any business until it shall have filed, in the office of the county clerk of the county in which its principal business is to be transacted, a copy of the articles of incorporation, certified by the secretary of state.

"It will be remembered that the plaintiff corporation received its certificate of incorporation from the secretary of state on the 22d day of July, 1923, and that its principal place of business, as stated in the articles of incorpora-

tion, was the City and County of San Francisco, and that the certified copy of the articles of incorporation was not filed in the office of the county clerk of the City and County of San Francisco until the 29th day of January, 1924, just a short time prior to the commencement of this present action. Therefore, at the time the contract in question was entered into for the purchase of the car, to-wit, August 25, 1923, the plaintiff corporation had not complied with all the provisions of said section 296 of the Civil Code. Thus we have a situation where the statute expressly prohibits a corporation from transacting any business until a certified copy of its articles of incorporation are filed with the county clerk of the county where its principal business is to be transacted, but does not prescribe a penalty for a violation thereof. Neither does it state that any contract made in the transaction of any business before the requirement is fulfilled is void.''

[1] We cannot accede to the appellants' contention, which contention was sustained by the district court of appeal, *supra*, that the contract under which the respondent corporation asserts title to the automobile in question is illegal and void for the reason that respondent had failed to seasonably comply with the provisions of section 296 of the Civil Code. In our opinion the respondent must be deemed to have been, at least, a *de facto* corporation at the time of its execution of said contract. [2] The requisites to constitute a corporation *de facto* are three: (1) A charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) a *bona fide* attempt to organize thereunder; and (3) an actual user of the corporate franchise. (*Tulare Irr. Dist.* v. *Shepard,* 185 U. S. 1, 13 [46 L. Ed. 773, 22 Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes]; *Westlake Park Inv. Co.* v. *Jordan,* 198 Cal. 609, 613, 614 [246 Pac. 807]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 560 [147 Pac. 238]; *Newcomb-Endicott Co.* v. *Fee,* 167 Mich. 574 [133 N. W. 540, 542]; 6 Cal. Jur. 656, sec. 66.)

The particular question presented in this action has arisen upon numerous occasions in other jurisdictions having statutes substantially identical in form with our section 296 of the Civil Code. Research of the authorities has disclosed that where the requirements of the law as conditions pre-

cedent to organization have been fully complied with and the stockholders and directors have proceeded to act under the corporate franchise, the entity becomes a *de facto* corporation notwithstanding its noncompliance with a statute requiring, as a condition precedent to the transaction of business, the filing of a copy of the articles of incorporation in the county where the principal business of the corporation is to be transacted. (*Newcomb-Endicott Co.* v. *Fee, supra; Tisch Auto Supply Co.* v. *Nelson,* 222 Mich. 196 [192 N. W. 600, 602]; *Swofford Bros. Co.* v. *Owen,* 37 Okl. 616 [L. R. A. 1916C, 189, 133 Pac. 193, 196]; *Whitney* v. *Wyman,* 101 U. S. 392, 397 [25 L. Ed. 1050, see, also, Rose's U. S. Notes]; *Inter-Ocean Newspaper Co.* v. *Robertson,* 296 Ill. 92 [129 N. E. 523, 524]; *The Joliet* v. *Frances,* 85 Ill. App. 243, 249, 250; *American University* v. *Wood,* 216 Ill. App. 189, 194.)

*Newcomb-Endicott Co.* v. *Fee, supra,* was an action to recover the price of certain goods. The statute therein involved likewise required, as a condition precedent to the transaction of business by a corporation, that a copy of its articles be filed in the county where the principal business of such corporation was to be transacted. At the time the indebtedness was incurred the corporation had not complied with said statute though, as here, it subsequently made the necessary filing. It was held in that case that the entity constituted a *de facto* corporation notwithstanding its failure to file a copy of its articles of incorporation prior to the commencement of business.

In *Whitney* v. *Wyman,* 101 U. S. 392 [25 L. Ed. 1050], the court, after referring to the point made by counsel that the corporation at the date of the order was forbidden to do any business, not having then filed its articles of association as required by the statute, said: "The restriction imposed by the statute is a simple inhibition. It did not declare that what was done should be void, nor was any penalty prescribed. No one but the state could object. The contract is valid as to the plaintiff, and he has no right to raise the question of its invalidity."

[3] The requirement of section 296 of our Civil Code that a copy of the articles of incorporation be filed in the county wherein the corporation is to transact its principal business is not a condition precedent to corporate organi-

zation. Provisions in general incorporation laws, prescribing conditions precedent to corporate existence, must be distinguished from provisions merely prescribing conditions to be complied with after acquiring corporate existence. Noncompliance with such a condition subsequent does not affect the existence of the corporation, although it may be ground for a proceeding by the state to forfeit the charter or franchise. (*Mokelumne Hill Min. Co.* v. *Woodbury*, 14 Cal. 424, 426 [73 Am. Dec. 658].) Conditions precedent to the right to engage in business after the corporation has been formed are conditions subsequent, a noncompliance with which, while it may give the state a right to maintain proceedings to forfeit the franchise, does not, in the absence of such proceedings, in any way affect the legal existence of the corporation.

Prior to the respondent's filing of a copy of its articles of incorporation in the county of its principal place of business and at the time it contracted to purchase the automobile in question, there existed the three necessary elements to constitute it a *de facto* corporation, viz., a general law authorizing its incorporation, a *bona fide* attempt to organize thereunder, and a user of the corporate franchise. No other objection than the one under consideration has been urged by the appellants as to the respondent's corporate existence. It is undisputed that there was a *bona fide* attempt to organize a corporation under our statutes. The presumption, in view of such circumstance, is strongly in favor of an honest intention to form a corporation. It follows, therefore, both from principle and by the great weight of authority, that the respondent at the time it contracted for the acquisition of the automobile in question was, at least, a *de facto* corporation. Had a copy of its articles of incorporation been filed with the clerk of the county wherein its principal business was to be transacted, it would have been, so far as the record before us discloses, a *de jure* corporation. The copy not having been seasonably filed, the right of the then *de facto* corporation to act within the scope of its corporate authority and to bind and be bound by its acts was none the less effective. This being so, the then legal existence of the respondent corporation cannot now be called into question collaterally. (Sec. 358, Civ. Code.) [4] Nor is the respondent now precluded from asserting any property

rights acquired by it prior to the filing of a copy of its articles as provided in section 296 of the Civil Code. (*Utah L. & T. Co.* v. *United States,* 230 Fed. 343, 346.)

It is stated in *Westlake Park Inv. Co.* v. *Jordan, supra,* that "The philosophy upon which the courts of practically every state and of the United States have gone far toward upholding the existence *de facto* of corporations which have colorably attempted to organize under statutes permitting incorporation for the general purposes which the persons forming the same seek to incorporate, and which have thereafter in good faith proceeded to function as such corporations, is that the law encourages and shares in the universal desire for the stability of business transactions, and that where such an organization has thus attempted to be created and has in fact organized and entered upon the transaction of business in good faith, the validity of its existence ought not to be inquired into collaterally."

[5] The appellants next urge that the contract, under which the respondent asserts title to the automobile, was not properly executed. In support of this contention it is asserted that said contract does not comply with the provisions of subdivision 4 of section 1624 of the Civil Code in that the duplicate copy of the purchase order, introduced in evidence as "Plaintiff's Exhibit No. 1," does not bear the signature of either the purchaser or seller. It is expressly provided in subdivision 4 of section 1624 of the Civil Code that a written contract or memorandum thereof covering the sale of personal property at a price in excess of $200 is not required when there has been either a part payment or delivery under the agreement of the parties. The record in the instant case discloses that the respondent corporation had not only paid a part of the contract price of the automobile but had accepted delivery of said vehicle through its authorized agent. The provisions of the statute of frauds (subd. 4, sec. 1624, Civ. Code) were therefore satisfied. This conclusion renders unnecessary any discussion as to whether the original copy of the contract, which was not introduced in evidence, bore the signatures of the parties thereto, as asserted by the respondent.

[6] We are unable to agree with the appellants' further contention that said contract is void as being in violation

of section 3440 of the Civil Code. The record discloses that Walter B. Lomax, the original purchaser of the car under a conditional sales contract, had returned the same to the legal owner after the latter had procured a judgment or was about to procure a judgment against him in an action instituted to recover the unpaid installments of the purchase price. Some months thereafter, and while the car was still in the possession of the legal owner, it was purchased under the contract in question by the respondent corporation and delivery thereof was then made by the legal owner. In view of these circumstances, it cannot be said that the purchase of the automobile by the respondent corporation violated in any manner the provisions of section 3440 of the Civil Code. There was, in fact, a change of possession from the legal owner to the respondent corporation, thus distinguishing this case from *Abrahams* v. *Hammel,* 40 Cal. App. 11 [180 Pac. 41], and *Joseph Herspring Co.* v. *Jones,* 55 Cal. App. 620 [203 Pac. 1038], cited by the appellants. Moreover, "Defendant's Exhibit 2," appended to the transcript, reveals that the Division of Motor Vehicles had on August 27, 1923, and prior to the levy of execution, issued its certificate of registration designating the respondent corporation as the registered owner of the automobile in question.

[7] It is next urged by the appellants that the respondent corporation did not constitute a separate and distinct legal person from Walter B. Lomax, and that the corporation and the individual should be treated as identical. In proper cases equity will look behind the corporate entity and consider who are the real and substantial parties in interest, whenever it becomes necessary to promote justice, or obviate inequitable results, and the law will follow equity in this respect. (*Erkenbrecher* v. *Grant,* 187 Cal. 7, 10 [200 Pac. 641].) In this case it appears that Walter B. Lomax and John R. Steffens, copartners, were agents for certain eastern companies, which required the formation of a corporation in order to handle their business. Steffens retired from the partnership and Lomax formed the corporation, now the plaintiff here. There is nothing in the record to challenge the good faith of the parties in the formation of the corporation, or to contradict the testimony that the incorporators, other than Walter B. Lomax, subscribed and

actually paid for shares of stock in the corporation. Mrs. Lomax appears to have been its financial backer. No issue was tendered by the pleadings in the court below on the question now raised by appellants. The evidence is insufficient to support the contention now raised and the findings are silent on the subject.

The judgment is affirmed.