## CALIFORNIA BARREL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7826.

Circuit Court of Appeals, Ninth Circuit.

Jan. 13, 1936.

Allen G. Wright and Randell Larson, of San Francisco, Cal., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The petition herein asks review of an order of the Board of Tax Appeals entered in favor of the Commissioner in a proceeding wherein the petitioner sought an order determining that it was entitled to deduct $306,348.56 in computing its net income for the calendar year 1927, such deduction being part of an alleged loss sustained by another corporation in 1925.

The statute under which the deduction is claimed is in the Revenue Act of 1926 (Act of February 26, 1926, c. 27, § 206 (b), 44 Stat. 9, 17, 26 U.S.C.A. § 117 note) and is as follows: "If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the

taxpayer for the succeeding taxable year (hereinafter in this section called 'second year'), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called 'third year') ; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

The case was tried on a stipulation of facts. The findings of the Board, found in its memorandum opinion, are as follows:

"All three corporations involved in the transactions hereinafter set forth were organized under the laws of California for the purpose of engaging in the manufacture and sale of barrels and cooperage.

"California Barrel Co. (hereinafter referred to as 'A' company) was organized in 1906.

"California Barrel Company, Inc., (hereinafter referred to as 'B' company) was organized on February 15, 1934 [1924?], for a term of 50 years, with a capital structure of 9,000 shares of voting preferred stock of $100 par value each, and 9,000 shares voting common stock of no par value. Under date of August 28, 1924, the 'A' company, pursuant to authority of its directors, stockholders and creditors, transferred all of its business, assets, goodwill, etc., to the 'B' company which issued, therefor 9,000 shares of preferred stock, to 'A' company, 995 shares of common stock to the stockholders of 'A' company as the latter's nominees, and 5 shares of common stock, as qualifying shares, to the incorporators and directors of 'B' company, who were also the directors of 'A' company. The remaining authorized capital stock of 'B' company was not issued. The 'B' company assumed all of the liabilities of 'A' company, except certain debts arising out of the latter's liability as a stockholder of a certain insolvent corporation. The transaction was entered into for the purpose of paying such debts, and upon receipt of 'B' company's stock, 'A' company executed a trust agreement for the benefit of its remaining creditors. The 'A' company continued its corporate existence and paid its annual franchise taxes.

"On July 29, 1925, the Supreme Court of California in Del Monte Light & Power Co. v. Jordan, 196 Cal. 488, 238 P. 710, held that, pursuant to the State Constitution and Civil Code, the preferred and common shares of a California corporation must have the same par value, and that such must be required of those seeking to organize a corporation or to amend the articles of corporations already organized. Following that decision, 'B' company tendered to the Secretary of State of California, amended articles providing that its no par value common stock should have a par value of $100 per share, as did its then outstanding preferred shares. The Secretary of State refused to permit the filing of such amendment, and subsequently, in December, 1925, he refused to issue to 'B' company the required statutory license to do business for the year 1926, although the prescribed license fee was tendered.

"Under date of December 10, 1925, the 'B' company sold certain assets transferred to it by 'A' company (namely stock of the Koster Products Company) at an alleged loss of $504,572.66 for the taxable year 1925.

"To provide a means for continuing the business during 1926, the 'B' company caused to be organized on December 19, 1925, for a term of 50 years, the California Barrel Company, Inc., (hereinafter referred to as 'C' company) the petitioner herein. The 'C' company's authorized capital stock consisted of 9,000 shares of preferred and 9,000 shares of common stock, both of the par value of $100 each and both having voting rights.

"A deed of conveyance, executed on December 29, 1925, by 'B' company as first party and grantor, by 'A' company as second party, and by 'C' company as third party and grantee transferred as of December 31, 1925, all of 'B' company's assets to 'C' company. In consideration therefor, 'C' company assumed all of 'B' company's liabilities and issued its capital stock as follows: 9,000 shares of preferred stock to 'A' company; 125 shares of common stock to F. J. Koster; 125 shares of common stock to B. J. Critcher as trustee for the stockholders of 'A' company other than F. J. Koster, and 5 shares of common stock, as qualifying shares to its incorporators and directors. The remaining authorized capital stock of 'C' company was not issued. It is stipulated that: 'No steps have been taken to dissolve the "B" company and no decree of court dissolving the same has ever been entered.'

"Upon receipt of 'C' company's stock, the 'A' company executed a new trust agreement for the benefit of its creditors. Except for the retirement on September 30, 1926, of 270 shares of preferred stock held by the 'A' company, no change has occurred in its stock ownership of 'C' company's stock.

"The 'A,' 'B,' and 'C' companies each filed a separate tax return for the year 1925. The 'A' company and 'C' company filed consolidated returns for the years 1926 and 1927, but neither company applied for nor received, from the Commissioner of Internal Revenue, formal permission to file such returns for those years. On its return for the calendar year 1925, the 'B' company reported a net loss of $504,572.66. The 'B' company filed no returns for the years 1926 and 1927. In the consolidated return filed by 'A' and 'C' companies for the calendar year 1927, the 'C' company (petitioner herein) claimed a statutory net loss deduction in the amount of $306,348.56 as a portion of the alleged net loss reported on 'B' company's return for the year 1925. In determining the deficiency in controversy, the respondent disallowed such deduction on ground that the alleged net loss was not sustained by this petitioner."

Upon an appeal from the decision of the Commissioner, the Board of Tax Appeals sustained the decision of the Commissioner in denying to petitioner the right to make such deduction, saying in its memorandum opinion: "Upon authority of New Colonial Ice Co., Inc., [v. Helvering] supra, [292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348] we hold that petitioner, the 'C' company, is not entitled to a deduction in 1927 for any portion of the net loss sustained in 1925 by its predecessor, the 'B' company. This conclusion obviates the necessity of determining the correct amount of the alleged net loss sustained by the 'B' company."

It is apparent from the various findings of the Board supra, and an inspection of the stipulation above referred to, that at the time of the transfer from "B" company to "C" company, the officers of both companies were identical; that the directors of both were substantially identical; that the stockholders in each were identical although their stockholdings in the respective companies were slightly different.

We think that the deduction sought by petitioner was properly denied by the Board, and we believe that New Colonial Ice Co. v. Helvering, supra, is controlling. In the course of the opinion in that case (292 U.S. 435, page 441, 54 S.Ct. 788, 791, 78 L.Ed. 1348) it is said:

"But * * * we are of opinion that in law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law. Thereafter neither corporation had any control over the other; the old corporation had no interest in the assets or business, and the chance of gain and the risk of loss were wholly with the new one. *Thus the contention that the two corporations were practically the same entity and therefore the same taxpayer has no basis, unless, as the petitioner insists, the fact that the stockholders of the two corporations were substantially the same constitutes such a basis.*

"As a general rule a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems. Of course, the rule is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." (Italics ours.)

Appellant contends that because the "B" company attempted to amend its articles, but was denied the right so to do; because the "B" company and its officers would be exposed to certain penalties if the "B" company attempted to transact business in 1926 without paying the license fees and securing a license, which right was denied to the "B" company; and because the officers and employees of the "B" company would be liable to criminal prosecution and its contracts made in 1926 without first paying the license fees and obtaining the license would be void—that these circumstances amounted to an "exceptional situation," and is one where the court may properly disregard the corporate fiction. In this connection, appellant says: "* * * When thus denied its legal rights it sought as the only sure, prompt, and practical course in the premises within the time limits available to preserve the continuity of its business enterprise, the organization of the C company under California law with a stock structure in harmony with the laws of California and in

line with what it had attempted to do through amendment of the articles of incorporation of the B company. * * *"

This court, we think, has already determined in McLaughlin v. Purity Inv. Co., 75 F.(2d) 30, that the circumstances shown by the facts in this case are not such as would bring it within the exception mentioned in New Colonial Ice Co. v. Helvering, supra.

Appellant contends that both New Colonial Ice Co. v. Helvering, supra, and McLaughlin v. Purity Inv. Co., supra, may be distinguished because in each of them the incorporation was a voluntary act on the part of the incorporators, whereas in the instant case the new corporation (C company and petitioner) was organized under such circumstances as amounted to compulsion. We cannot agree with this contention because the Supreme Court of California, after deciding on July 29, 1925, the case of Del Monte L. & P. Co. v. Jordan, supra, held that where corporations were organized under the laws of California having both par value and no par value stock, but were de facto corporations, such corporations had the right to conform to the Constitution. Westlake Park Investment Co. v. Jordan, 198 Cal. 609, 246 P. 807.

Had the B company pursued the remedy used by the petitioner in Westlake Park Investment Co. v. Jordan, supra, we must assume that it would have obtained its license and thereby eliminated any question as to whether or not it was entitled to utilize the loss sustained as a deduction. However, B company abandoned its efforts to obtain a license, and since it made no attempt to take advantage of the remedy permitted by law, we cannot hold that the circumstances of this case amounted to a compulsory organization of C company. We do not hold that if there was compulsion as to its organization, petitioner would be entitled to claim the amount in question as a deduction, but merely that there was no such compulsion here.

Appellant specifies as error all the assignments, being twelve in number. All these assignments are disposed of by the foregoing except the eleventh, which is: "The Board erred in not accepting and stating as its findings of fact all the facts stipulated in this case as the basis for its said opinion, decision and order." The Board of Tax Appeals did not make formal findings of fact, but did set out in its memorandum opinion sufficient facts upon which this case can be decided.

This court may look to the opinion of the Board of Tax Appeals for the facts. California Iron Yards Co. v. Commissioner of Internal Revenue (C.C.A.9) 47 F.(2d) 514, 518. See, also, Commissioner of Internal Revenue v. Crescent Leather Co. (C.C.A.1) 40 F.(2d) 833, 834; Insurance & Title Guarantee Co. v. Com'r of Internal Revenue (C.C.A.2) 36 F.(2d) 842, 844; Olson v. Commissioner of Internal Revenue (C.C.A.7) 67 F.(2d) 726, 728; Emerald Oil Co. v. Commissioner of Internal Revenue (C.C.A.10) 72 F.(2d) 681, 683. Compare Kendrick Coal & Dock Co. v. Com'r of Internal Revenue (C.C.A.8) 29 F.(2d) 559, 564, and Helvering v. Ames (C.C.A.8) 71 F.(2d) 939, 942.

Because the decision of the Board with respect to the legal inability of petitioner to claim a deduction herein asserted is correct, it is unnecessary to consider or determine the amount of the loss, for the reason that in no event is petitioner entitled to a deduction therefor.

Finding no error in the Board's decision the same is affirmed.