**AYER et al v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3363.

Circuit Court of Appeals, First Circuit.

Jan. 17, 1939.

Ralph E. Tibbetts, of Boston, Mass. (Bond & Tibbetts and Philip T. Doherty, all of Boston, Mass., on brief), for petitioners for review.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on brief), for the Commissioner.

Before BINGHAM and WILSON, Circuit Judges, and McLELLAN, District Judge.

WILSON, Circuit Judge.

The petitioners are here on a petition for a review of a decision of the Board of Tax Appeals entered on the twenty-fourth day of May, 1938, finding a deficiency in the income tax of the petitioners for the year 1929 in the sum of $697.27. The Commissioner of Internal Revenue had determined a deficiency in income tax in the sum of $8,051.37, and the petitioners in their petition to the Board claimed that there was no deficiency and that in fact they had overpaid their tax in the sum of $20,159.11.

The petitioners in 1929 owned 9,000 shares or interests of Keweenaw Land Association, Ltd., which had cost them between October 6, 1915, and June 11, 1923,

when the last of the shares were bought, a total aggregate sum of $1,017,915.

Keweenaw Land Association, Ltd., was organized under the laws of the State of Michigan as a partnership-association in the year 1908 and is concededly to be treated as an association under the Internal Revenue Acts. It was the successor to a similar association known as Keweenaw Association, Ltd., which was organized under the Michigan statutes on February 13, 1891. Keweenaw Association, Ltd., the old Association, had a paid-in capital at the time of its organization of $40,000, divided into 40,000 interests or shares of $1 each. There were five members of the Association, each of whom subscribed for and paid for his 8,000 interests or shares. From the time of its organization in 1891 to its termination in 1908, Keweenaw Association, Ltd., owned extensive acreage in the State of Michigan covered with growing timber and having valuable ore deposits. It carried on operations in the selling of timber and also of leasing the ore properties for operation on a royalty basis.

Under the statutes of Michigan the life of Keweenaw Association, Ltd., was restricted to a term of twenty years. Its original charter, therefore, would have expired in 1911. However, steps were taken in 1908 to obtain a new charter, as some of the shareholders were of advanced years and it was desirable to form a new association before complications arose resulting from the death of such shareholders.

The new association, Keweenaw Land Association, Ltd., which was organized on July 14, 1908, also had an authorized capital of $40,000, represented by 40,000 interests or shares of a par value of $1 each. All of these shares were subscribed for by the members of the old association, and to pay for these shares the old association declared a dividend payable direct to the new association in behalf of its shareholders, in the sum of $40,000. On October 12, 1908, the managers of the old association voted to sell and transfer the entire real and personal property of the association and all its assets to the new Keweenaw Land Association, Ltd., for the sum of $40,000, and on the same day a special meeting of the managers of the new association voted to accept the sale of these properties by the old association and pay therefor the sum of $40,000. These transactions were consummated in accordance with the votes.

The property which was transferred from the old association to the new association had a value greatly in excess of $40,000, though no value in excess of this was set up on the books of the old association, nor was any value put upon such assets, other than the $40,000, on the books of the new association. The books of the old association were carried along without change by the new association, a single treasurer's statement being rendered for the two associations for the fiscal year ending April 1, 1909. This statement showed the method of payment for the stock of the new association.

The officers of the new association at the time the change was made in 1908 were the same as the officers of the old association with the exception of the secretary.

The new association continued to operate in the same manner as the old association. The charter of the new association as respects the character of the business to be continued by it was the same as the charter of the old association, although the new association was expressly limited to the "leasing" of ores, minerals and other deposits, whereas the language of the charter of the old association was "selling" ores, minerals and other deposits.

As of March 1, 1913, the value of the ore-content in the property owned by Keweenaw Land Association, Ltd., the new association, was $12,385,808.22 and the value of the timber thereon was $4,690,-200. These values are the agreed basis for depletion of ore and timber by Keweenaw Land Association, Ltd. Of the March 1, 1913 value of ore and timber, namely, $17,076.008.22, of which $4,412,000, or 25.837 percent, represented the value of mines that were discovered by the new association, Keweenaw Land Association, Ltd., between October 12, 1908, and March 1, 1913.

As indicated at the outset, there is a wide divergence in the conclusions of the Commissioner, the Board of Tax Appeals and the petitioners as to the tax due from the petitioners for the year 1929.

The Commissioner found that the cost of the shares of the petitioners had been entirely met by the distributions from depletion reserves prior to January 1,

1929, and treated the sum of $225,694.35 distributed in 1929 as capital net gain and wholly taxable.

The Board of Tax Appeals, while it found that the cost of petitioners' shares was entirely extinguished prior to January 1, 1929, held that such part of the distributions from depletion reserves in 1929, which represented the ratio of $4,412,000 to $17,076,008.22, or 25.837 percent of the total sum distributed from depletion reserves in 1929, amounting to $58,312.65, was non-taxable in the hands of the petitioners in that year, as it came out of the increase in value of the property accrued to Keweenaw Land Association, Ltd., between October 12, 1908 and March 1, 1913, and held that the balance of said $225,694.35 distributed in 1929, amounting to $167,381.70, was taxable under Sec. 115 (d) of the 1928 Act, 26 U.S.C.A. § 115 (d) and note, so far as it exceeded the basic cost of the stock of the petitioners because it came out of a paid-in surplus of Keweenaw Land Association, Ltd.

The petitioners contended that the distribution of $225,694.35 from depletion reserves in 1929 was from the increase in value of the property between October 12, 1908 and March 1, 1913, under Sec. 115(b) of the 1928 Act, 26 U.S.C.A. § 115(b) was exempt from taxation.

Both parties to these proceedings, however, agree that the question raised by the petition for review is: What part, if any, of the distribution in 1929 of $225,694.35 was taxable?

The petitioners rely chiefly on the contention that the new Association organized in 1908, since it had the same officers, the same property, and continued to do the same business as the old, was the same both in substance and in form, that there was the same continuity of interest in the shareholders of the new as there was in the old, and hence any accumulation of gains prior to March 1, 1913, was not taxable under Sec. 115 (b) of the Revenue Act of 1928 and the entire sum of $225,694.35 was exempt from taxation.

There were, however, two separate entities, which were not mere matters of form. As the court said in the case of Turner-Farber-Love Co. v. Helvering, Com'r, 62 App.D.C. 369, 68 F.2d 416, 417:

"Nor is the situation in this respect changed because in the transfer of assets from the one company to the other a continuing business is involved. The fact of separate identity still remains, and the rule that courts will look beyond the shadow to the substance, which petitioner invokes, is here no more applicable than it was in New York, C. & St. L. R. Co. v. Burnet, 62 App.D.C. 29, 64 F.2d 152, 154, where we said it is applied only in cases in which to refuse to apply it would be to countenance fraud."

Again, the court said in New Colonial Ice Co. v. Helvering, 292 U.S., 435, 441, 54 S.Ct. 788, 791, 78 L.Ed. 1348.

"But * * * we are of opinion that in law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law. Thereafter neither corporation had any control over the other; the old corporation had no interest in the assets or business, and the chance of gain and the risk of loss were wholly with the new one. Thus the contention that the two corporations were practically the same entity and therefore the same taxpayer has no basis, unless, as the petitioner insists, the fact that the stockholders of the two corporations were substantially the same constitutes such a basis." California Barrel Co., Inc., v. Com'r of Internal Revenue, 9 Cir., 81 F.2d 190.

While there was no change in the status of the shareholders, but as the Board said in Rosenbaum Brothers, Inc. v. Com'r, 11 B.T.A. 736:

"We are here dealing, not with the renewal of an old charter, but the granting of a new one; not with the extension of the life of an old corporation, but with the creation of a new corporate life."

Also see Commissioner v. Sansome, 2 Cir., 60 F.2d 931.

The petitioners rely on Weiss v. Stearns, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520, but in that case there was a reorganization of the old corporation and the question was as to the rights of the stockholders, while here the question is as to the cost basis of the shares and the taxation of any excess.

The mines of the Keweenaw Land Association, Ltd., were operated on an extensive scale under lease, and each year since March 1, 1913, it is agreed that the

Land Association had distributed as dividends not only all of its current profits, but also substantial amounts which represented distributions from "depletion reserves."

The Board found that the total cost of the petitioners' shares on January 1, 1929, was $1,017,915, and that there was distributed between January 1, 1924, and January 1, 1929, from depletion reserves accumulated prior to March 1, 1913, the sum of $938,623.05, with a resulting excess of cost of the petitioners' shares on January 1, 1929, over deductible distributions from depletion reserves on that date of $79,291.95, unless deductions from depletion reserves during the years from 1915 to January 1, 1924, and especially in the year 1923, are to be considered in determining the basic cost of the petitioners' shares for the purpose of assessing taxes under sub-paragraphs (b) and (d) of Section 115 of the 1928 Act. However, any distribution from depletion reserves prior to 1924 is not material to a decision of this case, since the Acts of 1913, 1916, 1917 and 1918 did not require the basis of cost to be reduced for those years by such distributions with respect to petitioners' shares for the purposes indicated in Sections 115 (b) and 115 (d) of the 1928 Act; and Section 201 of the Act of 1921, 42 Stat. 228, specifically provided that any such reduction under that Act shall be *"for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of the stock or shares by the distributee."*

During 1929, in addition to any distribution from profits for that year, there was a distribution of $225,694.35, of which sum 25.837 percent, or $58,312 may be applied in reduction of the "remaining cost basis" of petitioners' shares under section 115 (b), which provides as follows:

"§ 115. * * * (b). Source of distributions. For the purposes of this Act [the Revenue Act of 1934] every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied a-gainst and reduce the adjusted basis of the stock provided in section 113 [section 214]."

This left a remainder of $167,381.70 which must have been distributed from the capital assets acquired by the new Association from the old Association on October 12, 1908, and if distributed may be regarded as "other distribution from capital" under section 115 (d), which provides as follows:

"§ 115. * * * (d). Other distributions from capital. If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines."

The provisions of Section 115 of the 1928 Act must be construed together. Therefore, any amounts applied in reduction of the cost basis of the petitioners' stock were not taxable and only the excess of any "distribution from capital" over the cost basis provided in section 113 was taxable under section 115 (d).

The application of $58,312 to the "remaining" cost basis of the petitioners' shares of $79,291.95 on January 1, 1929, still left a remaining cost basis of the petitioners' shares of $20,979.95, but any distribution from property acquired by the new Association from the old Association in October, 1908, or "other distribution from capital," within the meaning of Section 115 (d) shall first be applied against and reduce the "remaining cost basis" of the petitioners' stock provided in Section 113 of the 1928 Act, 26 U.S.C.A. § 113 note, leaving an "excess of such basis" the sum of $146,402.40.

From the record and pertinent findings of the Board, it appears, therefore, that $79,291.95 of the total distribution of $225,-694.35 in 1929 was applicable to reducing the cost basis of the shares and was not taxable, and that the remainder of such total distribution in 1929 from capital assets acquired of the old Association in

1908, viz.: $146,402.40, being in excess of such cost basis, was taxable under Section 115 (d).

The order of the Board of Tax Appeals. is vacated and the case is remanded to that Board with directions to redetermine the petitioners' tax for the year 1929 in a manner not inconsistent with this opinion.