[Civil No. 1843.   Filed May 27, 1921.]

[198 Pac. 118.]

## ED. A. SAWYER and GEORGE A. OLNEY, Appellants, v. PABST BREWING COMPANY, a Corporation, Appellee.

1. CORPORATIONS—CORPORATIONS CLASSIFIED AS "DE JURE" AND "DE FACTO" AND CORPORATIONS NOT SUFFICIENTLY ORGANIZED TO COME WITHIN LATTER CLASS.—Corporations may be divided into three classes: First, *de jure* corporations, where the organization is entirely and legally perfected; second, *de facto* corporations, where there has been a *bona fide* attempt to organize a corporation and a user of corporate powers, but the organization is defective; and, third, corporations not sufficiently organized to come within the latter class.

2. PARTNERSHIP—DEFENDANTS WHO WITH ANOTHER UNDERTOOK TO CARRY ON A BUSINESS THROUGH AN EXISTING CORPORATION, NOT LIABLE AS PARTNERS.—Where defendants, in connection with the president and treasurer of a duly organized but dormant corporation, undertook to carry on business through the corporation depositing to its credit money for stock, defendants are not, though the reorganization was never perfected, liable as partners to plaintiff, who extended credit to the corporation; it appearing that plaintiff knew nothing of defendant's connection, but had

---

2. On the question of ratification by corporation of unauthorized contract entered into by officer, by acceptance and retention of benefits, see note in 7 A. L. R. 1446.

previously done business with the president and treasurer, and that the arrangement increased the assets liable for plaintiff's claim.

3. PARTNERSHIP—ADMISSION BY LAYMAN HELD NOT TO MAKE HIM LIABLE AS PARTNER.—Where defendants, in connection with the president and treasurer of a duly organized but dormant corporation, on advice of their attorney undertook to do business through the corporation under its name, and paid in moneys for stock, *held* that an admission by one of the defendants that the three were partners will not establish liability, as partners, in view of the intricacy of the question and the differences of the courts in such a matter.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Andrew S. Gibbons, Judge. Reversed, with directions to modify judgment.

### STATEMENT OF FACTS.

The Pabst Brewing Company sued the Arizona Mercantile Company, alleging it to be a partnership consisting of Sawyer, Olney, and Wolpe. The Mercantile Company and Wolpe defaulted. Defendants, Sawyer and Olney joined in an answer to the complaint, in which they alleged that the goods for the value of which plaintiff sued were sold and delivered to the Arizona Mercantile Company, a duly organized and existing corporation doing business in Arizona. They also alleged that they were not partners with the Mercantile Company or with Wolpe; that they had, at the special insistence and request of the Mercantile Company and its president, Wolpe, made, from time to time, advances to the Mercantile Company for the purpose of carrying on its business, and, to the extent of such advances, were creditors of such Mercantile Company.

The case was tried before a jury, which found the issues in favor of the plaintiff, and thereafter judgment was entered thereon. At the close of the evidence, both plaintiff and defendants asked for an instructed verdict. The defendants assign as error the

XXII Ariz.—25

refusal of the court to instruct the jury to return such verdict, and also the giving of certain instructions.

The facts, briefly stated, are: Defendant Wolpe, prior to April, 1917, had been engaged in the selling in Arizona of a drink known as Pablo, which he had bought from the plaintiff. About that time he solicited the other defendants to join him in the business of buying and selling soft drinks, including Pablo, to which they consented. It was agreed among them that their operations would be carried on by a corporation. They went together to the office of Mr. George J. Stoneman, a practicing attorney of Phoenix, and submitted to him the matter of making proper arrangements, and while in his office Wolpe suggested that he was president and treasurer of the Arizona Mercantile Company, an already organized and existing corporation, and it was thereupon mutually agreed that they would take over that corporation and carry on their business enterprise through it. There was some discussion as to the shares that each of the parties would receive, and how the business was to be managed. Wolpe was to take to Stoneman's office the minutes and by-laws of the Arizona Mercantile Company, and a meeting of the stockholders was to be arranged for the purpose of reorganization. Stoneman advised them that they could not issue stock or elect a new board of directors until a meeting of the stockholders had been called, and that he would attend to the issuing of the stock to the three of them in proper proportions as soon as such meeting was had. They were advised by Stoneman that they could conduct the business under the name of the Arizona Mercantile Company pending the reorganization, although, as he says, "I expressed some disapproval." The Arizona Mercantile Company had theretofore been engaged in the

wholesale liquor business under the management and control of Wolpe, who was its president and treasurer. It had liquidated its business, and at the time had no assets and owed no debts. At this meeting it was definitely settled that defendants, Sawyer and Olney, would invest in the enterprise $1,500 each, and that Wolpe would put into the concern whatever stock he had on hand, estimated to be worth $1,500 or $1,600, and that stock of the corporation would be issued to them later on. Sawyer and Olney thereupon deposited in the bank to the credit of the Arizona Mercantile Company $1,500 each. The business was thereafter conducted under the management of Wolpe in the name of the Arizona Mercantile Company. In that name it bought goods from plaintiff from April, 1917, to September, valued at $12,128, and paid it all except $1,212.80. The corporation was not reorganized, and no certificates of stock were ever issued to defendants, Sawyer, Olney, or Wolpe. The plaintiff knew no one in its dealings except the Mercantile Company and Wolpe, and did not learn of Sawyer's or Olney's connection with the business until some time in August, when it discovered that the Mercantile Company was in failing condition. When this fact became known, Olney, who was on the ground, took steps, along with an agent of plaintiff, in investigating, collecting, and conserving the assets of the concern, and it is in evidence that he on one occasion stated that he, Sawyer, and Wolpe were partners in the soft drink business. Wolpe owned or had in his name one share of stock of the par value of $100. There were outstanding, besides the Wolpe share, two other shares. Wolpe had been in charge of and controlled the Arizona Mercantile Company for some seven years before the soft drink business started. While it appears that the Arizona Mercantile Company was a subsidiary corporation to Melczer Brothers,

who had formerly carried on business in Phoenix, Wolpe testified he was in fact the owner of the Mercantile Company. It is in evidence that Wolpe, Olney, and Sawyer never intended to form a partnership, but believed they were operating as a corporation.

Messrs. Baker & Whitney, for Appellants.

Messrs. Townsend, Stockton & Drake, for Appellee.

ROSS, C. J. (After Stating the Facts as Above.)— It is the contention of defendants on this appeal that the above facts clearly show that they were not a partnership, and that the court, therefore, erred in its refusal, at the close of the evidence, to instruct the jury to return a verdict in their favor.

"As to ability to transact business, corporations may be divided into three classes: First, *de jure* corporations, or those where the organization is entirely and legally perfected; second, *de facto* corporations, where there has been a *bona fide* attempt to organize a corporation and a user of corporate powers, but the organization is defective; third, corporations not sufficiently organized to come within the latter class." *Alder Slope Ditch Co.* v. *Moonshine Ditch Co.,* 90 Or. 385, 176 Pac. 593.

In cases where parties associated together to carry on a business have been sought to be held as partners, notwithstanding they have thought themselves to be a corporation, the decisive question is always as to whether what they have done, or caused to be done, toward organization is sufficient to constitute them a corporation *de facto* or *de jure.* The courts are not agreed as to what acts will constitute a *de facto* corporation, largely, we think, because the incorporating laws of the states differ, but they unite in agreeing when the acts done, although falling short of consti-

tuting a *de jure* corporation, are sufficient to constitute a *de facto* corporation, the associates are not individually liable on contracts entered into by the corporation. In the present case we are not bothered with the question as to whether the Arizona Mercantile Company was a *de facto* or a *de jure* corporation. It is conceded by both parties to be of the latter character. It was properly and legally chartered, fully organized, and, under its articles of incorporation, empowered to carry on the business undertaken, and, had the board of directors or the stockholders authorized the stock subscriptions that its president and treasurer accepted, the transaction could not be questioned. Appellee asserts that what was done did not effect a merging of the defendants into the dormant corporation; that there was not even a *de facto* or colorable reorganization, and the defendants merely used the Arizona Mercantile Company as a trade name in anticipation of gaining control of the dormant corporation.

As we gather it, the dominant idea in this proposition is that, because there was no reorganization of the Arizona Mercantile Company by the defendants, they had no right to do their business under that name as a corporation. It cannot reasonably and fairly be said that the defendants arbitrarily assumed to use the name of the Arizona Mercantile Company, for the reason that its president and treasurer, who seemed to be its *alter ego,* and who at least had been in control of it, assumed the right and authority to accept subscriptions of stock from the defendants, and did on behalf of the corporation receive from them $3,000 which, together with his contribution, constituted the entire paid-in capital of the company.

Wolpe was not a stranger to the Mercantile Company. He was its chief executive officer, and, as its treasurer, held its purse strings. If he did not own

it, as he claimed, his relation to it was of such an intimate and commanding nature as to cause Sawyer, Olney, and Wolpe, under the advice of their lawyer, to assume to carry on the business in its name pending a reorganization and the issuing of their stock. They did not adopt the name and carry on their business in it with the intention of later incorporating, as is common in so many of the cases cited by plaintiff. On the contrary, they, in good faith and under legal advice, paid hard cash into an existing body corporate, and in its name thereafter the business was transacted. They may have expected—in fact, we know they expected—to reorganize the Arizona Mercantile Company, but their failure to do so did not make it any the less a *de jure* corporation, and did not in the least mislead the plaintiff.

Whether the company was regularly, or in strict compliance with law, prepared to accept stock subscriptions and enter into the business of buying and selling soft drinks or not, it unquestionably did so through the offices of its president and treasurer, and presumably with the acquiescence and consent of all of its officers and stockholders. In such circumstances, the corporation, having received the benefits from the stock sale, would not be permitted to retain those benefits and repudiate its obligations thereunder. This, we think, is the universal rule. *Weathersby* v. *Texas & O. Lbr. Co.*, 107 Tex. 474, 7 A. L. R. 1440, and note at page 1446, 180 S. W. 735.

Our research, which has been somewhat extensive, has not brought to light, nor has counsel's industry called our attention to, any cases wherein the facts were as they are in the present case. *Wesco Supply Co.* v. *Smith*, 134 Ark. 23, 203 S. W. 6, we think is of sufficient similarity to be referred to as authority. In that case the Arkansas Public Service Company was organized by U. S. Bratton and others, Bratton

being the principal owner of the proposed corporation, and its president. He sold practically one-half interest in the concern for $20,500 to one Smith, to be paid at various times thereafter. Smith paid in part of the purchase money, and took control of and managed the business for a while. For debts contracted during this time, the Arkansas Public Service Company gave its notes to the Wesco Supply Company. The service company becoming insolvent, the supply company sued Bratton and Smith as partners. The lower court gave judgment in favor of Smith, and, upon appeal, the judgment was affirmed; the court using this language:

"The undisputed facts here show that appellant dealt with the service company as a corporation. Such being the case, there is no good reason why the appellant should be permitted to hold the appellee individually liable as a partner for the debts of the service company. Appellant did not deal with the appellee, but dealt with the corporation, and appellant would get all that it was entitled to in justice according to its contract, if it maintained a liability against the corporation or its individual stockholders. Appellee under the evidence was certainly not one of the original incorporators, and did not undertake by his supposed purchase of stock to become liable as a partner for the debts of the corporation, nor assume any other liability than would be incumbent upon him as a shareholder in proportion to his interest. . . . But neither does it follow that, because the incorporators or the individual stockholders might be liable under a given state of facts, one who had contracted for the purchase of stock, but to whom no stock in fact has been transferred, would also be liable as a partner. Here the undisputed evidence shows that Smith was not an original incorporator, and that he had in fact only entered into a contract for the purchase of stock."

In the present case plaintiff had been selling its product to defendant Wolpe, and when the Arizona

Mercantile Company took over the business plaintiff simply transferred its account from Wolpe to the Arizona Mercantile Company, with a $4,500 or $4,600 capital, as against the $1,500 or $1,600 stock of goods that Wolpe then had on hand. It had the benefit of this increased financial ability of its creditor, and dealt with it with absolutely no knowledge that defendants Sawyer and Olney were in any way at all identified with the corporation. It appears to us that, in equity, the plaintiff would secure all that it was entitled to if the obligation sued upon be held to be that of the Arizona Mercantile Company, a corporation. If Olney stated on one occasion—and this he denies—that the business was a partnership, it would not make it so if, under the facts, it was a corporation. The ordinary layman is hardly able to determine so involved and intricate a question when lawyers so radically differ.

Appellee cites the case of *Bank of De Soto* v. *Reed,* 50 Tex. Civ. App. 102, 109 S. W. 256, as sustaining its position, but in that case the question involved was as to whether the proposed corporation was in fact a *de facto* corporation, and the court held that it was not under the laws of Texas. Appellee also relies upon *Forbes* v. *Whittemore,* 62 Ark. 229, 35 S. W. 223. In that case the purchasers of the Southwestern Arkansas College's real and personal property, after taking possession, contracted some debts and gave notes in the name of the Southwestern Arkansas College. It was held that the parties who purchased the property of the college were personally liable on the notes, and that the college was not. The court said these parties were not the agents of the college, nor members of the college. "In their contract with it, each party preserved its individuality, neither being merged into the other." And further observed that there was no organization of the purchasers into a

corporation; that they were not a *de facto* corporation, and that the assumption of the name of the corporation did not constitute them a corporation nor give them the right to act in a corporate capacity. The facts in the case are not parallel to the facts of the present case, for several reasons; the principal one being that in the agreement it was stipulated the property should revert to the Southwestern Arkansas College on default of payments as provided therein. The contract was not made by the president of the Southwestern Arkansas College, and did not purport to be for its benefit. On the contrary, it was an effort to charge its property without its consent and to its damage.

We conclude that the court erred in refusing to instruct the jury to return its verdict in favor of defendants Sawyer and Olney, upon their motion at the close of the evidence. The cause is therefore remanded, with directions that judgment be modified by striking out any recovery against defendants Sawyer and Olney.

BAKER and McALISTER, JJ., concur.