PROVIDENT SECURITY LIFE INSUR-
ANCE COMPANY, Appellant,

v.

John S. GORSUCH, Appellee.

No. 18307.

United States Court of Appeals
Ninth Circuit.

Oct. 1, 1963.

Elsing & Crable, W. T. Elsing, and Francis R. Crable, Phoenix, Ariz., for appellant.

W. Lee McLane, Jr. and Nola McLane, Phoenix, Ariz., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

John S. Gorsuch, a stockholder in United Security Life (United), brought this action to have declared void a merger agreement entered into between United and Provident Security Life Insurance Company (Provident). District court jurisdiction is based on diversity of citizenship. Judgment was entered for plaintiff and defendant, Provident, appeals.

Gorsuch first attacked the validity of this merger during the course of the appeal to this court in Niesz v. Gorsuch, 9 Cir., 295 F.2d 909. That was a stockholder's derivative action in which Gorsuch, suing on behalf of United, sought to recover $314,794.19 for the corporation from certain individuals all but one of whom were or had been stockholders, directors or officers of United.

After the complaint had been filed in that action, a merger was consummated whereby Provident was to continue in existence as the surviving corporation and United was to cease to exist. The

derivative action nevertheless proceeded as if United continued in existence, Provident not being added as a party. After trial, the trial court, among other things, set aside, as inadequate, a verdict in the sum of $20,000 against certain defendants, and entered judgment in the sum of $314,794.19 against these and certain other defendants. In the alternative, the trial court determined that the jury verdict was advisory only, and entered findings of fact and conclusions of law supporting its judgment for plaintiff in the amount indicated.

In that case the trial court made no specific findings with reference to the merger, but did find and conclude that United was and is a corporation and citizen of and domiciled in the State of Arizona. On appeal the defendants in that case challenged this finding, contending that United was no longer in existence and that neither United nor Gorsuch had capacity to continue with the lawsuit.

In resisting this challenge, Gorsuch contended, on appeal, that the merger was not valid because American Security Investment Co. (American) which voted 38.79% of United stock in favor of the merger assertedly did not have good title to that stock. Rejecting that contention we held that American had prima facie title to the stock and that if Gorsuch wanted to contest the legality of the merger "he should have done so in a direct action for that purpose." We further held that the merger was not subject to collateral attack in that action and that, for the purposes of that suit, the merger had been validly consummated, United having ceased to be a corporation.

These determinations led us to decide, without reaching the merits, that the judgment in the derivative action must be reversed because Gorsuch had lost his standing as a stockholder in United, and United had lost its capacity to be sued as a party defendant and its capacity as the real party in interest. The further proceedings which have since been had in that action are recounted in our decision therein, filed today, *sub nom.* DePinto v. Provident Security Life Insurance Company, 9 Cir., 323 F.2d 826.

Gorsuch having been precluded by our decision in Niesz v. Gorsuch, from challenging the validity of the merger in that action, instituted this direct and separate action on February 12, 1962. Specifically, he seeks a judicial declaration that the merger between United and Provident is void, and that United is a viable corporation still in existence. He also seeks an accounting on behalf of United of the moneys, assets and other property obtained from United in connection with the merger, together with all the income derived therefrom.

The cause came before the same district judge who acted in the derivative suit, both at the time of the initial judgment therein and in the further proceedings thereafter had.

In the course of the trial court proceedings both parties made a motion for summary judgment. Three days after plaintiff filed his motion for summary judgment, he filed a motion for judgment by default. This latter motion was based on the ground that defendant had not filed an answer within the time prescribed by rule, nor at all, and had not filed any motion having the effect of extending the time for filing an answer.

The trial court thereafter filed a memorandum decision and order denying defendant's motion for summary judgment, granting plaintiff's like motion, and providing that a form of summary judgment conforming to the foregoing rulings might be presented for signature and entry. In this same decision and order the court also granted the motion for default.

A judgment denominated "Summary Judgment" was entered for Gorsuch and against Provident on May 15, 1962, this being the same date that judgment was entered for Provident in the further proceedings in the derivative action.

The court judicially declared that the merger was and remains null and void and that United is a viable corporation

still in existence. Provident was ordered to account to United as prayed for in the complaint. The final decretal provision of this judgment is that " * * * the enforcement of said judgment shall be stayed until the further order of the Court."

Defendant moved to set aside the default, vacate the judgment, and grant a rehearing pursuant to Rules 59 and 60, Federal Rules of Civil Procedure. These motions were denied whereupon defendant appealed.

The questions first presented here have to do with the order granting the motion for default.[1]

The complaint was filed on February 12, 1962, and, according to plaintiff's motion for default, the summons and complaint were duly served upon defendant on the same day.[2] Under Rule 12(a), Federal Rules of Civil Procedure, a defendant, other than the United States or an officer or agency thereof, is required to serve his answer within twenty days after the service of the summons and complaint upon him unless the court directs otherwise pursuant to Rule 4(e), and except where this period is altered by the service of a motion permitted under Rule 12.

The trial court did not, pursuant to Rule 4(e) specify a different period within which the answer should be served. It follows that the answer should have been served by March 5, 1962,[3] unless the period for serving the answer was extended by serving, before March 5, 1962, a motion permitted under Rule 12. No answer had been served by March 19, 1962 when the motion for judgment by default was filed.

A motion denominated motion for summary judgment was filed on March 5, 1962, and was presumably served on the same date. Plaintiff argues that a mo-

tion for summary judgment is not a motion "permitted" under Rule 12, and therefore the service of that motion did not extend the time for serving the answer beyond March 5, 1962.

Defendant apparently accepts plaintiff's assertion that a motion for summary judgment is not "permitted" by Rule 12. It argues, however, that the motion which was served, despite its heading, was actually a motion to dismiss for failure of the complaint to state a claim, and was therefore "permitted" under Rule 12(b). Defendant argues, alternatively, that if the serving of the described motion did not extend the time for serving the answer, the denial of its motion to set aside the default was, in any event, an abuse of discretion.

■■■ The district court may, pursuant to Rules 55(c) and 60(b), Federal Rules of Civil Procedure, and for good cause shown, set aside a judgment by default. The disposition of a motion to set aside a default judgment is a matter which lies largely within the discretion of the district court. Hiern v. St. Paul-Mercury Indem. Co., 5 Cir., 262 F.2d 526, 530. An abuse of discretion in denying such a motion is not shown unless the district court was clearly wrong in finding that good cause had not been shown for the motion to set aside the default judgment. See Ferraro v. Arthur M. Rosenberg Co., 2 Cir., 156 F.2d 212, 214.

■■■ The cause here shown by defendant in support of its motion to set aside the default judgment was that: (1) before the expiration of the period within which an answer could have been timely filed, defendant appeared, and served and filed a timely motion for summary judgment; (2) the motion was not frivolous, but raised substantial questions which, if decided in defendant's favor, would have warranted judgment in its favor,

1. The parties have apparently regarded the judgment which was entered, despite its heading, as both a summary judgment and a judgment by default.

2. Proof of service was not filed in the case. Defendant, however, made no point of this

deficiency in the trial court, apparently accepting plaintiff's allegations as to the time when the summons and complaint were filed.

3. The twentieth day fell on Sunday, March 4, 1962.

thereby obviating the need of an answer; (3) defendant, in good faith although perhaps erroneously, believed that such motion was a "permitted" motion under Rule 12, thereby extending the time for serving an answer; (4) plaintiff was not prejudiced by the failure to serve an answer because plaintiff had himself filed a motion for summary judgment without awaiting the service of an answer or action on his motion for default, and the district court had granted such motion; (5) defendant's answer, lodged with its motion to set aside the default judgment, tendered additional substantial defenses, including laches and the statute of limitations, not advanced in its motion for summary judgment.

In our opinion the district court was clearly wrong in finding, in effect, that these circumstances do not constitute good cause for setting aside the judgment by default on the ground of excusable neglect. See Rule 60(b) (1), Federal Rules of Civil Procedure. We are of the view that the showing here made for opening the default was substantially stronger than that which was made in Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34, in which an order denying a motion to open a default was reversed.

Denial of appellant's motion to open the default was therefore an abuse of discretion. It follows that the judgment under review is not sustainable on the basis of the default judgment.[4]

The remaining specifications of error pertain to the summary judgment aspect of the decision under review.

■ In the memorandum decision and order granting the motion for summary judgment the trial court stated four reasons for granting that relief. The first of these is that less than the required two-thirds of the stockholders of United approved the merger. This is true, the court held, because 38,799.89 of the ap-

proving votes of United stockholders were voted for American Security Investment Company (American), and at that time American was not the record owner of those shares.

The factual basis for this holding is to be found in the affidavit of Vernon E. Niesz, which is attached to plaintiff's district court memorandum in opposition to defendant's motion for summary judgment. In this affidavit, allegations are made to the effect that American came into possession of 38,799.89 shares of United stock on or about October 17, 1957; that the ownership of these shares was never registered in the name of American in the stock register book or any other book or record of United; and that American was never the record owner of any shares of stock in United.

Copies of the stock certificates, on the basis of which American voted most of these 38,799.89 shares of United by proxy, are attached to the Niesz affidavit. On the face of each the name, James E. Kelly, J. E. Kelly, or United Family Guild, appears as the registered owner. The assignment form on the back of each such certificate is endorsed in blank by the registered owner, neither American nor any other name appearing therein as transferee.

Defendant argues that this ground for granting summary judgment is without merit because, under Arizona law, title to a stock certificate may be transferred by delivery of the certificate endorsed either in blank or to a specific person by the person appearing in the certificate to be the owner, it being unnecessary to the effectuation of such transfer that the shares be transferred on the books of the company. Plaintiff makes no response to this argument.

In 1943, Arizona adopted the Uniform Stock Transfer Act, Chapter 56, Laws of 1943. The relevant part of section 3 of that chapter, A.R.S. § 10–231, is quoted

---

4. It is therefore unnecessary for us to decide whether the motion, designated motion for summary judgment, was a "permitted" motion under Rule 12(b), thereby extending the time for service of an answer.

in the margin.[5] It is specifically provided in this section that delivery of a stock certificate, endorsed in blank by the person appearing by the certificate to be the owner, as accomplished here, is sufficient to pass title, notwithstanding any provisions of the articles of incorporation, by-laws, or the certificate itself, providing for a different method of transfer.[6]

It follows that it was error to grant summary judgment upon the ground that the merger is void because American was not the "record" owner of the shares of United which were voted for it in favor of the merger.

■ The second reason stated in the trial court's memorandum decision and order why summary judgment should be granted is that a certified copy of the merger agreement was not recorded in the office of the county recorder of each county in which one of the constituent corporations at the time had its principal office, as required by the statutes of Arizona.[7]

The factual basis for this holding is to be found in the affidavits of N. C. Kelly Moore, the county recorder of Maricopa County, Arizona, and of Nola McLane, one of the attorneys for plaintiff. These affidavits are attached to plaintiff's memorandum in opposition to defendant's motion for summary judgment.[8]

Defendant concedes that a certified copy of the merger agreement was not recorded in the office of the county recorder prior to the commencement of this action.[9] However, defendant argues in effect, the merger is in all other respects valid and, this being the case, tardy com-

5. "§ 10–231. *Transfer of certificate and shares*
 "A. Title to a certificate and to the shares represented thereby can be transferred only:
 "1. By delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby.
 "2. * * *
 * * * * *
 "B. The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate, and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

6. If the corporation had not obtained notice of the negotiation of the stock certificates, it would have been entitled to treat the registered owner as the true owner for dividend and voting purposes. But here the transferee gave notice of the transfer by exercising its voting rights. Cf. Turnbull v. Longacre Bank, 249 N.Y. 159, 163 N.E. 135, 138 (construing Uniform Stock Transfer Act).

7. The Arizona statute in question is A.R.S. § 10–345, subd. A, which reads as follows: "10–345. *Formal requirements for consolidation*
 "A. If an agreement for consolidation, ratified and certified by each constituent corporation as provided in § 10–344, provides that one of the constituent corporations shall be continued as the consolidated corporation, the certified agreement shall be filed in the office of the corporation commission, and one copy thereof, certified by the corporation commission, shall be recorded in the office of the county recorder of each county in which one of the constituent corporations has its principal office. The consolidation shall thereupon be deemed consummated and the separate existence of the constituent corporations to have ceased, and the consolidated corporation shall become a single corporation in accordance with the agreement, under its articles and name, possessing all powers and subject to all restrictions and disabilities of corporations organized for profit."

8. According to these affidavits, no certified copy, nor any copy, of the merger agreement had been recorded in the office of the county recorder of Maricopa County as of March 19, 1962.

9. Defendant asserts that a certified copy of the agreement was recorded in that office on May 23, 1952. It did not, by affidavit or documentary evidence, establish the fact that a certified copy of the merger agreement was so recorded. However, in its memorandum in support of motion to set aside default and vacate judgment, this representation was made, the docket and page of such recording being given. Plaintiff did not dispute this assertion in his answering memorandum, and does not dispute it on this appeal.

pliance with the statute in question left at least a de facto merger, and such a merger is not subject to attack by a nonconsenting shareholder.

Plaintiff of course challenges the assertion that the merger is valid in all other respects. But for the purpose of discussing this point we will assume that it is. If the merger is fatally defective on some other ground, it may be set aside on that ground, without regard to the tardy recording of a certified copy of the merger agreement.

■ There seems to be no Arizona court decision dealing with de facto mergers. But Arizona recognizes the doctrine of de facto corporations in general,[10] and the rules pertaining thereto also apply to de facto consolidations and mergers. 15 Fletcher Cyclopedia Corporations, Perm. Ed., § 7155, p. 249.

As stated by that writer, if there is valid legislative authority for a consolidation, an attempt in good faith to consolidate under the statute, a colorable compliance with the statute, and the exercise or assumption of powers as a consolidated corporation, "the new or consolidated corporation is a corporation de facto, and, as a general rule, its corporate existence can only be attacked by the state, and in a direct proceeding." (Id.)[11] We cite, in the margin, several specific instances in which a consolidation or merger was held to have de facto status notwithstanding failure to comply, or

tardy compliance, with a procedural statute.[12]

Both United and Provident have been proceeding since April, 1959, when the merger agreement was approved by the stockholders of Provident, as if a merger had been effectuated. The life insurance policies issued by United were taken over and have ever since been serviced by Provident. According to defendants, since that date all legal claims of United's former policyholders were and have been satisfied.

On the assumption that the merger is valid in other respects we hold that, despite the tardy compliance with A.R.S. § 10–345, subd. A, a de facto merger came into existence in April, 1959, and, as such, it is not subject to attack by an nonconsenting stockholder on the ground of such tardy compliance.

■ Plaintiff argues that even if the tardy recording of a certified copy of the agreement does not void the merger by operation of the Arizona statutes, it nevertheless constitutes a breach of the merger agreement. Plaintiff refers to provisions of the contract whereby the two companies agree to merge "pursuant" to the provisions of A.R.S. §§ 10–341 et seq., and 20–731. Reference is also made to a provision of the agreement providing that, after execution of the agreement, "Provident shall thereupon forthwith file a certified copy of the agreement of consolidation pursuant to Section 10–

10. See Rice v. Sanger Bros., 27 Ariz. 15, 19–21, 229 P. 397, 399; Sawyer v. Pabst Brewing Co., 22 Ariz. 384, 198 P. 118, 120, 18 A.L.R. 277. General decisional law with regard to the de facto status of incorporation where there has been a failure to file according to the relevant statute, is reviewed in 37 A.L.R. 1319; 22 A.L.R. 376 (annotations).

11. Strictly speaking, the transaction involved in our case is a merger rather than a consolidation. A consolidation contemplates the organization of a new corporation while a merger results in the survival of an existing corporation which has absorbed one or more others. See 15 Fletcher Cyclopedia Corporations, Perm.

Ed. § 7041, pp. 6–10. But with regard to the de facto doctrine the courts draw no distinction between consolidations and mergers. We also note that the applicable Arizona statutes (A.R.S. §§ 10–341 to 10–349) are contained in Article 11 of Chapter 1 of the General Corporation Law, the article being entitled "Consolidation or Merger."

12. Helvering v. Metropolitan Edison Co., 306 U.S. 522, 529, 59 S.Ct. 634, 83 L. Ed. 957; Leavenworth County Com'rs v. Chicago, R. I. & Pac. Ry. Co., 134 U.S. 688, 698, 702, 10 S.Ct. 708, 33 L.Ed. 1064; Alabama Fid. Mortgage & Bond Co. v. Dubberly, 198 Ala. 545, 73 So. 911.

345, A.R.S., and the consolidation shall thereupon be deemed consummated."

Under our holding that notwithstanding tardy recording of a certified copy of this agreement a de facto merger was consummated (which, in this particular, has become de jure by the subsequent recording), we do not regard such tardiness as a substantial breach of the merger agreement.

The trial court therefore erred in granting summary judgment upon the ground that a certified copy of the merger agreement was not recorded in the office of the appropriate county recorder.

■ The third reason stated in the district court's memorandum decision and order why summary judgment should be granted has reference to the provisions of paragraph 11 of the merger agreement. This paragraph relates to the disposition of monies which Provident may receive as a result of the derivative action which was then, and still is, pending. It is therein provided that the stockholders of United who have surrendered their shares in that company pursuant to the merger agreement for shares in Provident shall be entitled to the net proceeds, if any, of such litigation, as set out in certificates of contingent interest to be issued to each.

In the certificates of contingent interest it is provided that there shall be deducted from any such net proceeds any recovery against Provident on possible claims which may be asserted against United which are not provided for in the merger agreement. The net sum available after such deductions, if any, would then be distributed to the holders of the certificates of contingent interest in proportion to their respective interests.

The district court held that, by reason of this provision of the merger agreement, all of the assets did not pass to Provident, as required by A.R.S. § 10–346.[13]

Defendant argues, in effect, that in so ruling the trial court misinterpreted the merger agreement considered in the setting in which it was made.

It is provided in section 7 of the merger agreement that, upon completion of the merger, all of the property and assets of every kind and nature of United shall become the property and assets of Provident. This included the interest of United in the derivative action then pending which Gorsuch had brought for the benefit of United against United and other defendants.[14]

In determining what representation the consenting stockholders should receive in Provident in exchange for their surrender of United stock, it was necessary to determine the net value of all United assets being transferred to Provident. But the derivative action had not yet gone to trial,[15] and the parties to the merger agreement had no way of knowing whether United's interest therein would have any value, and if so, how much.

Being thus unable to fix a value on this asset, it was apparently decided to regard it as having no value insofar as the merger was concerned. Thus, no Provident stock was issued to United stockholders on the basis of any value being attributed to United's interest in the derivative action. To make certain of this, paragraph 8(c) of the merger agreement provides for the cancellation of 38,798 shares of the stock of United then held in the

13. A.R.S. § 10–346 reads:

"*10–346. Transfer of assets and liabilities*

"All debts due to, and all property and assets of, each corporation consolidated as provided in this article shall vest in the consolidated corporation, but rights of creditors against and liens on the property of each corporation consolidated shall be preserved unimpaired. The debts, liabilities and duties of the corporations consolidated shall pass to the consolidated

corporation, and may be enforced against it in the same manner and to the same extent as if incurred or contracted by, or imposed upon it."

14. The derivative action was commenced on November 4, 1958. The merger agreement is dated February 7, 1959. It was executed for United in March, 1959, and for Provident in April, 1959.

15. The trial therein commenced on March 9, 1960.

name of American. It was in connection with the purchase of this stock from James E. Kelly and United Family Guild, by American, organized by some of the defendants in the derivative action, that the asserted depletion of United assets occurred which is at the foundation of the derivative action.

The parties to the merger also apparently recognized that, although no value could then be fixed for United's interest in the derivative action, it might turn out that Provident, as the successor to United's interest, would receive some monetary recovery therefrom. It was also realized that Provident, as the successor to United, might be held liable on some claim which might exist against United, of which the parties were then unaware, and could not have taken into account in determining the net value of the transferred assets.

Paragraph 11 of the merger agreement was evidently designed to meet these future contingencies. In substance it does not provide for the retention, by United, of assets which should have been transferred, but for the distribution, to consenting United stockholders, of the monetary value of a transferred asset of doubtful and unknown value, if it later developed that it had substantial value.

So viewed we do not regard the paragraph 11 provision as a violation of A.R.S. § 10–346, for United's interest in the derivative action was transferred to and vested in Provident. If there is anything wrong with the arrangement it is the possible future depletion of Provident's assets after the merger, accomplished by honoring the commitment, under paragraph 11, to distribute the net proceeds of the derivative action, less certain deductions, to consenting stockholders of United. It may be found that such a de-

pletion would violate applicable law governing the distribution of dividends and the liquidation of corporate assets.

But no such distribution may ever occur, for there may never be any such proceeds. If it later develops that there are net proceeds after the indicated deductions available for distribution under paragraph 11, then will be the time and occasion to test the validity of the arrangement. That litigation, if it proves necessary, will provide an opportunity for the consenting stockholders of United who now hold Provident stock, the other stockholders of Provident, the policyholders of Provident, and others who may be adversely affected by that adjudication, to have their day in court. None of them, save Gorsuch in the first of these categories, is before us in this action.

Any such suit will not, however, affect the validity of this merger, but only of paragraph 11 of the merger agreement.[16] All that will be involved will be the legality of such a distribution by Provident. There may, of course, be equitable aspects to such a case. The consenting stockholders of United may be able to establish that they should at least be entitled to receive additional Provident stock equal to the net value of such proceeds. Otherwise, it might be contended, Provident would have what turned out to be a valuable asset of United for which it did not credit those stockholders in the initial allotment of Provident stock. But these are not problems which concern us here.

 The conclusion which we reach concerning this problem finds support in the official action taken by the Arizona Director of Insurance in approving the merger agreement. We do not agree with defendant that this official action is conclusive and binding on the courts

---

16. This, in essence, is the position stated by defendant in its reply brief here, where it states:

"As to the argument of appellee that 'all assets did not vest in Provident,' it appears that the very statute cited by him has the effect of nullifying his argument. As he says (Appellee's brief, page 11), §

10–346 A.R.S. expressly provides that all debts and all property and all assets of each corporation shall vest in the consolidated corporation. If this statute has any meaning or force whatsoever, it means that regardless of what might appear in a merger agreement, the statutory provisions would prevail."

on the question of the validity of the merger. But we think it is entitled to respect and weight in a judicial determination of that question.

Under A.R.S. § 20–731, no merger or consolidation of domestic stock insurers may be effectuated in Arizona unless the plan and agreement have been filed with and approved in writing by the Director.[17] The Director is precluded by that statute from giving his approval if he finds the plan or agreement to be contrary to law. The Director not only approved the merger agreement,[18] but actively worked towards its consummation.[19]

It follows that the approval which the Director gave to this merger agreement represents the official judgment and ruling of the state agency charged with the responsibility of protecting the public interest with regard to the merger of insurers, that there was no failure to comply with A.R.S. § 10–346.

In Niesz v. Gorsuch, 9 Cir., 295 F.2d 909, 912, we took the Director's then-assumed approval into consideration in determining that the merger was prima facie valid, and would be regarded as valid for the purposes of that case. Likewise, we here take that now factually-established official state action into consideration. In our view it lends substantial support to our conclusion that the merger is not invalid by reason of failure to comply with A.R.S. § 10–346.

Defendant argues that not only was there a failure of Provident to assume all of the assets of United, but also a failure to assume all of its liabilities, as required by A.R.S. § 10–346.

This was not one of the grounds on which the district court relied in granting summary judgment. Defendant's argument turns, in part, on inferences it draws from paragraph 8 of the merger agreement, an exhibit attached to that agreement, and paragraph 3 of the form of certificate of contingent interest. We have examined these materials and are of the view, as apparently was the district court, that this contention is without merit.

■ The fourth and final reason stated in the district court's memorandum decision and order why summary judgment should be granted is that the trans-

---

17. A.R.S. § 20–731, subd. B reads:
"*20–731. Merger or consolidation of stock insurers*
\* \* \* \* \*
"*B.* No such merger or consolidation shall be effectuated unless in advance thereof the plan and agreement therefor have been filed with and approved in writing by the director of insurance. The director shall give his approval within a reasonable time after filing unless he finds the plan or agreement:
"1. Is contrary to law.
"2. Inequitable to the stockholders of any domestic insurer involved.
"3. Would substantially reduce the security of and service to be rendered to policyholders of the domestic insurer in this state or elsewhere."

18. The approval is as follows:
"APPROVAL
"The foregoing merger agreement between United Security Life the ceding company, & *Provident Security Life Insurance Company*, the reinsurer, having been presented and filed with the Insurance Department in Arizona, is hereby approved.

"Dated this 26th day of February, 1959.
"s/ G. A. Bushnell
"George A. Bushnell
"Director of Insurance
"State of Arizona"

19. This is evidenced by the Director's letter of February 7, 1959, appended to one of the affidavits of record, which reads in part:
"Plans have been formulated whereby the United Security Life Insurance Company \* \* \* will merge into the Provident Security Life Insurance Company, an old line legal reserve life insurance company, with the result that the policyholders' surplus will be in the approximate amount of one-half million dollars, a substantial over-all margin for contingencies.
"Our purpose in working out a plan of merger other than the process of liquidation has been to preserve the policyholders' equity and to safeguard the interest of all the policyholders \* \* \* and we feel that the present plan of merger is the means by which the policyholders' equity will be safeguarded and without loss to any of the United Security Life policyholders."

action by which American came into possession of the United stock which it voted in favor of the merger was improper and invalid.[20]

American did not purchase its 38.79% stock interest in United from United. It purchased the bulk of this stock, consisting of 35.14% of the outstanding stock of United from James E. Kelly, who had been the controlling shareholder, president and a director of United. It purchased the remainder, consisting of 3.-65% of the outstanding stock of United from United Family Guild, another corporation controlled by Kelly. There is accordingly no contention that the stock was fraudulently issued by United. Nor is it contended that Kelly and United Family Guild were not the rightful owners of this stock.

But it was Gorsuch's contention in Gorsuch v. United Security Life, and it is his contention here, that Kelly and those who incorporated American, paid Kelly and United Family Guild for this stock largely with assets unlawfully taken from United. According to Gorsuch, the method utilized in accomplishing this diversion of United's assets, was for American to sell to United 30,800 of the former's assertedly worthless shares, for $308,000 in the assets of United. These latter assets were then transferred by American to Kelly in payment for Kelly's stock in United.[21]

As a factual basis for the essential allegation that American had unlawfully taken $314,794.19 of the liquid assets of United to pay Kelly for the purchase of United stock from him, plaintiff referred to findings of fact Nos. 15–20 in the case of Gorsuch v. United Security Life, and the certified transcript of record in that case.

Defendant contends that if there was an unlawful diversion of the assets of United to American so that the latter could buy United stock lawfully held by Kelly and United Family Guild, this would not undermine American's title to that stock in such manner as to render of no effect the voting of that stock by American in favor of the merger proposal. Accordingly, defendant argues, summary judgment for plaintiff should not have been entered on the ground that this transaction invalidated the merger.[22]

Any impropriety in the transfer of assets from United to American could not affect American's right to that stock as against Kelly and United Family Guild, the lawful owners of that stock prior to the transfer. This is true because Kelly and United Family Guild were participants in the transaction and received the fruits of the transfer in the form of payment for their stock in United.[23]

It may well be that the United stock held by American as a result of that transaction was subject to a constructive

20. The court thus accepted, as one ground for the summary judgment, the only ground specifically alleged in the complaint. As set forth in paragraph 7 of that pleading, this ground is:

"7. The merger agreement, referred to in paragraph 5 above, and steps taken pursuant thereto by defendant were null and void for the reason that the requirements of Arizona law were not met in that two-thirds of the outstanding stock did not legally consent to the merger for the reason that 38.79% of the stock voting for the merger was unlawfully held and voted by American Security Investment Company which unlawfully used $314,794.19 of the United Security Life's assets to 'pay' for the 38.79% of United Security Stock and therefore did not have good title thereto."

21. According to Gorsuch, $6,794.19 of United cash was also transferred to American which, with the $308,000 in United property, comprised the $314,794.-19 referred to in the complaint.

22. Defendant also argues that this matter should not have been disposed of by summary judgment because it had, by affidavit, created a genuine issue of material fact as to this matter. Plaintiff disputes this contention and also argues that the facts, even if now denied by defendant, are established against it under principles of res judicata, by reason of the findings of fact entered in the Gorsuch v. United Security Life suit.

23. In any event, it is the transferor of the stock, and not the issuing corporation, who may complain and take action con-

850

trust in favor of United by reason of the asserted fraud. But no such constructive trust had been declared at the time the stock was voted for the merger proposal by American. Since then this stock has been cancelled pursuant to the merger agreement.

Plaintiff cites no authority in support of the proposition that amenability of issued stock to the imposition of a constructive trust on behalf of the corporation precludes a valid voting of the stock even prior to a judicial declaration of such a trust. All corporate transactions involving the vote of stockholders would be subject to intolerable uncertainty if the validity thereof could later be challenged on grounds of this kind.

We hold that, assuming all of the circumstances to be as asserted by plaintiff, American nevertheless had such title to Kelly's lawfully issued United stock as enabled it to validly vote such stock in favor of the merger proposal.[24]

It is our conclusion, for the reasons stated above, that the judgment for plaintiff is not sustainable on any of the grounds relied upon by the district court, nor upon the additional ground, not relied upon by that court, that there was a failure of Provident to assume all of the liabilities of United. It therefore becomes unnecessary to explore the various other reasons advanced by defendant why summary judgment should have been entered in its favor.[25] There was no cross appeal.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

cerning a stock transfer which is defective in any respect. 12 Fletcher Cyc. Corp. §§ 5529, 5530, pp. 598, 600. Neither Kelly nor United Family Guild has made any complaint against American in connection with the transaction.

24. Our disposition of this question makes it unnecessary to decide whether the granting of summary judgment on this ground was precluded by the presence of a genuine issue of material fact.

25. Among these are the following: (1) Plaintiff is concluded from questioning the validity of the merger because of the decision of this court in Niesz v. Gorsuch, 9 Cir., 295 F.2d 909; (2) Plaintiff is concluded by the original district court decision rendered in that litigation from questioning the validity of the merger; and (3) To hold the merger invalid would be totally inconsistent with the judgment entered in 1962 in the derivative action.