508 P.2d 355

**Herbert TERRELL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Frank Collins, an individual, d/b/a A C & C Building Wreckers, Inc., Respondent Employer.**

**No. 1 CA–IC 649.**

Court of Appeals of Arizona, Division 1, Department B.

April 3, 1973.

Rehearing Denied April 27, 1973.

William B. Revis, William B. Revis, Ltd., Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Commission of Arizona.

Chris T. Johnson, Johnson, Sundberg & Crossman, P. C., and Kenneth A. Harper, Collins & Harper, Phoenix, for respondent Employer.

HAIRE, Judge.

In this review by certiorari of an Industrial Commission award, the petitioning workman seeks to overturn the Commission's refusal to hold a major stockholder of an uninsured corporate employer liable to the injured workman for workmen's compensation benefits.[1] Petitioner advances several theories as to why the stockholder should be held liable for the

---

1. A.R.S. § 23–907, subsec. B provides as follows:

"B. An employee of such an employer, [a non-complying employer] or the employee's dependents in case death ensued, may, in lieu of proceeding against the employer by civil action in court, file his application with the commission for compensation in accordance with the provisions of this chapter, and the commission shall hear and determine the application for compensation in the manner other claims are heard and determined before the commission. The compensation so determined shall be paid by the employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the commission. In the event the employer does not pay such compensation within ten days, the commission, in its discretion, may order the award paid out of the special fund created by § 23–1065 and in that event the cause of action against the employer shall be deemed assigned to the commission for the benefit of such fund. The commission shall then have a claim against the employer for the amount so paid, together with all necessary expenses, a reasonable attorney's fee to be fixed by the court, and a penalty equal to ten per cent of the amount paid by the commission out of the special fund." (Amended 1971).

corporate employer's dereliction, the principal theory being based upon the failure of the corporation to file a certified copy of its articles of incorporation with the Maricopa County Recorder as required by statute.[2]

The facts pertinent to this review as found by the Commission's hearing officer (and supported by our examination of the record) show that petitioner was injured on February 25, 1969 while employed by A C & C Building Wreckers, Inc. (A C & C). At the time of the injury A C & C had three or more persons in its employment and was subject to the workmen's compensation laws of the State of Arizona, but had not complied with them. Prior to the time of the injury, A C & C had, on August 30, 1968, filed its articles of incorporation with the Arizona Corporation Commission, but had neglected to file a certified copy of the articles with the Maricopa County Recorder as required by A. R.S. § 10–123, or to publish the articles as required by A.R.S. § 10–124.[3] The hearing officer expressly concluded, and we find this conclusion amply supported by the record, that a bona fide attempt was made to validly organize the corporation, and, that the corporation was operated in good faith and with the belief that it was validly organized and existing under the laws of the State of Arizona; that the corporation had kept corporate minutes, had assets of its own, its own telephone, and conducted its business as a corporation. From the foregoing the hearing officer concluded that A C & C was a de facto corporation within the doctrine recognized by the Arizona Supreme Court in Rice v. Sanger Brothers, 27 Ariz. 15, 229 P. 397 (1924),

and that therefore the stockholders would not be liable for corporate obligations.

Our research reveals only three decisions dealing with this facet of Arizona law. In Sawyer v. Pabst Brewing Co., 22 Ariz. 384, 198 P. 118 (1921), while finding that a de jure corporation did exist under the facts of that case, the Arizona Supreme Court first recognized that a defective bona fide attempt at corporate organization coupled with the user of the corporate powers might result in the creation of a de facto corporation, and that if a de facto corporation did result, the stockholders would not be held liable for corporate obligations as a result of the defective organization. As stated by the court:

"'As to ability to transact business, corporations may be divided into three classes: First, de jure corporations, or those where the organization is entirely and legally perfected; second, de facto corporations, where there has been a bona fide attempt to organize a corporation and a user of corporate powers, but the organization is defective; third, corporations not sufficiently organized to come within the latter class.' Alder Slope Ditch Co. v. Moonshine Ditch Co., 90 Or. 385, 176 P. 593.

"In cases where parties associated together to carry on a business have been sought to be held as partners, notwithstanding they have thought themselves to be a corporation, the decisive question is always as to whether what they have done, or caused to be done, toward organization is sufficient to constitute them a corporation de facto or de jure. The courts are not agreed as to what acts will constitute a de facto corpora-

---

2. A.R.S. § 10–123 provides as follows:
    "The incorporators shall, before doing business as a corporation, file the articles in the office of the corporation commission and a certified copy thereof in the office of the county recorder in each county of the state where the corporation proposes to transact business, where such certified copy shall be indexed and recorded."

3. A.R.S. § 10–124 provides as follows:
    "The articles shall be published at least six times in a newspaper published in the county in which the principal place of business is located, or, if there is no newspaper published in such county, in some newspaper having a general circulation therein. Upon the expiration thereof, an affidavit of publication shall be filed in the office of the corporation commission."

tion, largely, we think, because the incorporating laws of the states differ, but they unite in agreeing when the acts done, although falling short of constituting a *de jure* corporation, are sufficient to constitute a *de facto* corporation, the associates are not individually liable on contracts entered into by the corporation." 22 Ariz. at 388–389, 198 P. at 120.

Three years later in Rice v. Sanger Brothers, *supra,* the Arizona Supreme Court reiterated the principles laid down in Sawyer, *supra,* but declined to exempt the stockholders under the particular facts of that case because of the stockholders' fraud in the organization and use of the corporate organization involved. Some thirty-nine years later the Ninth Circuit Court of Appeals applied the *de facto* doctrine to an Arizona fact situation involving a defective attempted merger of two Arizona corporations. Notwithstanding the corporations' failure to comply with the filing requirements of A.R.S. § 10–345, subsec. A, the court found a *de facto* merger applying the Rice and Sawyer principles. Provident Security Life Insurance Co. v. Gorsuch, 323 F.2d 839 (9th Cir. 1963).

There is substantial agreement among the authorities that a *de facto* corporation can result even in the absence of compliance with all of the technical statutory incorporation provisions. The reason generally given for holding such a corporation to have achieved a *de facto* existence is that if rights and franchises have been usurped, they are the rights and franchises of the state, which alone can object. As stated in Westlake Park Investment Co. v. Jordan, 198 Cal. 609, 246 P. 807, 810 (1926):

"The philosophy upon which the courts of practically every state and of the United States have gone far toward upholding the existence de facto of corporations which have colorably attempted to organize under statutes permitting incorporation for the general purposes

which the persons forming the same seek to incorporate, and which have thereafter in good faith proceeded to function as such corporations, is that the law encourages and shares in the universal desire for the stability of business transactions, and that, where such an organization has thus attempted to be created and has in fact organized and entered upon the transaction of business in good faith, the validity of its existence ought not to be inquired into collaterally."

*See also,* 18 Am.Jur.2d, Corporations § 49 et seq. (1965).

The authorities are also in agreement that once it has been determined that *de facto* existence has been achieved, then the stockholders cannot be held liable to third persons who deal with the corporation merely on account of the technical defect in the formation of the corporation. See Sawyer v. Pabst Brewing Co., *supra;* Demarest v. Grant, 128 N.Y. 205, 28 N.E. 645 (1891); Refsnes v. Myers, 164 Wash. 205, 2 P.2d 656 (1931); *see also* 18 Am. Jur.2d, Corporations § 56 (1965). The three prerequisites to the creation of a *de facto* corporation are:

1. The existence of a charter or law under which a corporation with the powers which it undertakes to exercise may lawfully exist.

2. An effort in good faith to incorporate thereunder.

3. An actual user or exercise of corporate powers.

*See* Sawyer v. Pabst Brewing Co., *supra;* 8 Fletcher, Cyclopedia of Corporations § 3777 (perm. ed. rev. vol. 1966). The disagreement and the apparent conflict in the decisions arise from the application of the second element to different fact situations to determine just how far the statute must be followed to demonstrate a "good faith effort to incorporate" under the applicable statutory law. Many decisions differentiate between statutory conditions precedent to the actual existence of the corporation as opposed to conditions precedent to its right to commence or do business,

latter type of condition precedent does not holding that failure to comply with the preclude a finding of *de facto* existence. *See* 8 Fletcher, Cyclopedia of Corporations, §§ 3799, 3801 (perm. ed. rev. vol. 1966).

It is petitioner's contention that A C & C's failure to file a certified copy of its articles of incorporation with the county recorder precludes *de facto* corporate existence.[4] A review of the pertinent Arizona constitutional and statutory provisions discloses the following:

> "No domestic . . . corporation shall do any business in this State without having filed its articles of incorporation or a certified copy thereof with the Corporation Commission, and without having one or more known places of business and an authorized agent, or agents, in the State upon whom process may be served." Arizona Constitution, Art. 14, § 8, A.R.S.

A C & C fully complied with these constitutional filing requirements. A.R.S. § 10–123, set forth in footnote 2, *supra,* adds another filing requirement—the filing of a certified copy of the articles with the county recorder "before doing business". As previously stated, A C & C did not comply with this filing requirement. While it is generally held that there can be no *de facto* corporation where there has been a complete failure to file in any office, In re Johnson-Hart Co., 34 F.2d 183 (D.Minn.1929); 8 Fletcher, Cyclopedia of Corporations § 3820 (perm. ed. rev. vol. 1966),[5] it is also generally held that the failure to file in one of two required offices does not preclude *de facto* existence, Whitney v. Wyman, 101 U.S. 392, 25 L.Ed. 1050 (1880); Bakersfield Town Hall Ass'n v. Chester, 55 Cal. 98 (1880); 8 Fletcher, Cyclopedia of Corporations § 3821 (perm. ed. rev. vol. 1966).

Here, petitioner places great reliance upon the language of A.R.S. § 10–123 re-

quiring the omitted filing "before doing business". Similar language has been considered by many courts and held not to preclude *de facto* existence. *See* Tisch Auto Supply Co. v. Nelson, 222 Mich. 196, 192 N.W. 600 (1923), requiring filing before the corporation "shall commence business"; Midwest Air Filters Pacific, Inc. v. Finn, 201 Cal. 587, 258 P. 382 (1927) wherein the court held that a *de facto* corporation existed despite failure to comply with:

> ". . . section 296 of the Civil Code which provides that no corporation shall be authorized to transact any business until it shall have filed, in .the office of the county clerk of the county in which its principal business is to be transacted, a copy of the articles of incorporation, certified by the secretary of state." 258 P. at 384.

*See also* Annot. 22 A.L.R. 379 (1923), Supplemented 37 A.L.R. 1319 (1925); 8 Fletcher, Cyclopedia of Corporations § 3819 (perm. ed. rev. vol. 1966).

While we have referred to prior Arizona decisional law recognizing the adoption by the Arizona Supreme Court of the *de facto* corporate existence doctrine, we have not previously referred to Arizona constitutional and statutory provisions which establish the *de facto* doctrine as the law in Arizona separate and apart from decisional law. Article 14, § 13 of the Arizona Constitution provides as follows:

> "No persons acting as a corporation under the laws of Arizona shall be permitted to set up, or rely upon, the want of a legal organization as a defense to any action which may be brought against them as a corporation, nor shall any person or persons who may be sued on a contract now or hereafter made with such corporation, or sued for any injury now or hereafter done to its property, or for a wrong done to its interests, be per-

---

4. Petitioner recognizes that the subsequent failure to publish the articles does not preclude *de facto* existence. *See* 8 Fletcher, Cyclopedia of Corporations, § 3827 (perm. ed. rev. vol. 1966).

5. In the absence of any filing whatsoever, the cases generally find there has been no bona fide or colorable attempt to comply with the statutory incorporation requirements.

mitted to rely upon such want of legal organization in his or their defense."

A.R.S. § 10–172 is stated in practically identical language. While these provisions do not expressly negate stockholder liability when a *de facto* corporation is found to exist, they do furnish strong legislative support for the *de facto* doctrine as recognized by the Arizona Supreme Court in *Sawyer, supra.* We further note that in view of these constitutional and statutory provisions, the result reached in the decisions relied upon by petitioner, *Jones v. Aspen Hardware Co.*, 21 Colo. 263, 40 P. 457 (1895), and *Maryland Tube & Ironworks v. West End Improvement Co.*, 87 Md. 207, 39 A. 620 (1898), are contrary to Arizona law. In our opinion the facts show a sufficient compliance with Arizona law to justify the hearing officer's conclusion that the incorporators made a bona fide attempt to validly organize A C & C as a corporation. That there was an actual good faith user of the corporate structure and powers cannot be seriously questioned. We therefore hold that the hearing officer and the Commission did not err in rejecting petitioner's contentions concerning the defective corporate organization.

■ Petitioner next contends that stockholder Collins could not avoid liability for A C & C's workmen's compensation obligations because he is a "statutory employer" under the provisions of A.R.S. § 23–902, subsec. B, which provides as follows:

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his subcontractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer."

By its terms, § 23–902, subsec. B applies only to a situation where an employer hires a contractor to do work which "is a part or process in the trade or business of the employer". Overlooking the fact that A C & C was not a "contractor" with its stockholder Collins in the fact situation under review, it is certainly clear that building demolition was not "a part or process in the trade or business" of stockholder Collins, whose trade and profession is that of a lawyer. Nor is *Whipple v. Industrial Commission*, 59 Ariz. 1, 121 P.2d 876 (1942), applying an alter ego theory to hold the stockholder liable in a workmen's compensation setting, pertinent, inasmuch as here the hearing officer found facts negating the application of the alter ego theory and expressly found that A C & C Building Wreckers, Inc. was organized in good faith for the purpose of conducting a wrecking business and was not merely a subterfuge for the avoidance of liability for workmen's compensation.

■ Petitioner's final contention is that the Commission's initial award entered November 7, 1969, naming stockholder Collins as the employer is binding against Collins because in Collins' timely filed petition for hearing he merely stated as a reason that he did not "have three or more employees". First, we note that the petitioner herein filed the first petition for hearing concerning the November 7, 1969 award, and he did not set forth *any reasons* for the requested hearing. We further note that the November 7, 1969 award was the initial award entered in this matter and was entered without any prior hearing of any kind. Under the Arizona decisions, all issues are open in the first formal hearing after an initial Commission award and are not limited by the language of the petition for hearing. *Fish v. Industrial Commission*, 12 Ariz.App. 486, 472 P.2d 97 (1970). The record does not support petitioner's allegations in his opening brief which would lead the court to believe that petitioner did not know that the corporate status of A C & C was to be in issue. If petitioner had not known in advance that this issue was going to be raised, he would not have had a subpoena *duces tecum* issued to the direc-

tor of incorporation division, Arizona Corporation Commission, directing the production of all corporate records relating to A C & C. We hold that Collins was not precluded from presenting evidence that A C & C was the employer of petitioner, and further that petitioner was given an adequate opportunity to present any evidence he deemed pertinent to that issue.

The award is affirmed.

JACOBSON, C. J., Div. 1, and EUBANK, P. J., concur.